RALPH D. MORRISON *vs.* BOSTON INSURANCE COMPANY.

Suffolk.     November 13, 1919. — January 9, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & JENNEY, JJ.

*Insurance*, Fire. *Bills and Notes*, Consideration. *Contract*, Implied. *Evidence*, Presumptions and burden of proof.

A manager of an insurance company gave a draft upon the company to the holder of a policy of insurance against loss by fire in satisfaction of a loss under the policy. The company refused to honor the draft upon presentation on the grounds that there was no consideration for the draft because the insured had no insurable interest at the time of the loss, and because, although the property was subject to a mortgage, he had represented that it was not, which, the company contended, rendered the policy void. At the trial of an action by the insured upon the draft, it was undisputed that the record title to the property insured was in the mother of the insured, subject to a mortgage to a third person, both at the time when the policy was issued and at the time of the loss. There was evidence tending to show that vacant land was purchased by the mother upon which the house, afterwards insured, was built at the joint expense of her and of the plaintiff, and that they then occupied the house; that the plaintiff then acquired his mother's title and gave a first mortgage to a bank and a second mortgage to his mother; that two years and two months later the mother foreclosed the second mortgage, herself took title to the property, discharged the first mortgage and gave a new mortgage to a third person and that this was done under an agreement between her and the plaintiff, not in writing, that, upon payment and satisfaction of the debt to her, the mother would "transfer title back to" the plaintiff; that the mortgage to the third person was given about five years before the issuance of the defendant's policy, but that the mortgagee advanced no money and never received any interest; that, when the policy was issued, the plaintiff had paid the indebtedness to his mother. The loss occurred about four months after the policy was issued. *Held*, that

(1) A finding was warranted that, both at the time when the policy was issued and when the loss occurred, the plaintiff had an equitable interest in the property which was insurable;

(2) A finding was warranted that the mortgage held by the third person was not a valid incumbrance, so that the plaintiff's failure to mention it was not a misrepresentation;

(3) It could not be ruled as a matter of law that there was no consideration for the draft which was the basis of the action.

At the trial of an action against an insurance company upon a negotiable draft, which was drawn by the manager of the company upon the company in settlement of a loss under a policy and which the company refused to honor upon presentation, the defendant alleged in defence that there was no consideration for the draft because the policy was void. The evidence of the plaintiff was undisputed and, if it was believed, the plaintiff was entitled to a verdict as a matter of law. The defendant asked that the jury be instructed in substance, that, if they found that the policy was void, there was no consideration for the draft and they must find for the defendant. *Held,* that the defendant was entitled to have the instruction given, as the jury might have disbelieved all the plaintiff's evidence.

At the trial of the action above described, it appeared that the draft had been given by the defendant for the full amount of an award by a referee appointed under the provisions of the policy, that, upon receiving the draft, the plaintiff had given a receipt in full of all claims and demands for the loss and had delivered the policy to the company for cancellation. *Held,* that the taking of the draft and the signing of the receipt and delivery of the policy for cancellation could not be said as a matter of law in themselves to constitute a sufficient consideration for the draft.

CONTRACT upon a draft upon the defendant, signed by its manager and delivered to the plaintiff in adjustment of a claim upon a policy of insurance against loss by fire. Writ dated October 15, 1917.

In the Superior Court the action was tried before *Fox*, J. The material evidence is described in the opinion. At the close of the evidence, the defendant moved that a verdict be ordered in its favor, and, that motion being denied, requested that, among others, the following instructions be given to the jury:

"1. On all the evidence the plaintiff cannot recover, and your verdict must be for the defendant."

"4. The plaintiff had no insurable interest in the premises 137 Wellington Street, and the policy issued by the defendant was void *ab initio.*"

"6. The policy issued by the defendant to the plaintiff was void, and there was therefore no consideration for the draft sued on.

"7. If you find that the policy issued by the defendant to the plaintiff was void, there was no consideration for the draft sued on, and you must find for the defendant."

The requests were refused. In the course of the charge to the jury, the judge, subject to an exception by the defendant, stated: "So, gentlemen, if the plaintiff, having an insurance policy from this company, and a fire having occurred during the term of the

policy, if he honestly and in good faith made a claim upon that company for that loss and this draft was given in settlement of that claim, and upon the signing of a receipt, that that was a sufficient consideration for the defendant, even if it may turn out (because of facts appearing later) that that policy was void."

After the charge, in dealing with a request of the defendant for an instruction reading as follows, "If you find that the plaintiff had no insurable interest in the premises numbered 137 Wellington Street, then the policy issued by the defendant was void *ab initio*," the judge, subject to an exception by the defendant, instructed the jury as follows: "I will give you that, but I ask you to recall what I have already said to the effect that the suit here is a suit upon the draft in payment of claims under the policy and that if the plaintiff had in good faith presented a claim on his policy and without practising any deceit, and the defendant gave a check for the amount of that loss, that the fact that it has turned out since (if it is so) that he had no insurable interest in the property would not necessarily defeat suit on the draft."

There was a verdict for the plaintiff in the sum of $5,336.30; and the defendant alleged exceptions.

*F. W. Eaton,* for the defendant.

*James J. McCarthy,* for the plaintiff.

BRALEY, J. The defendant issued to the plaintiff a policy of insurance on a frame dwelling house, which having been partially destroyed by fire, the loss was adjusted by a draft payable at sight to the plaintiff's order, who thereupon delivered to the company a receipt which purported not only to be in full of all claims and demands for loss and damage by fire, but also stated that the policy "is hereby cancelled and surrendered to the company." The defendant having refused upon presentation to honor the draft, the present action is brought to enforce payment according to its tenor. The answer sets up want of consideration, and that the defendant issued the policy upon the representations of the plaintiff that he was the owner of the property which was unincumbered, when in fact he had no insurable interest, and it was subject to an outstanding mortgage. It is further averred that, relying upon the plaintiff's statements in the proof of loss made under oath that, when the policy issued as well as at the time of the fire, he was the owner and that the property was free from

incumbrance, it issued the draft, but, having subsequently ascertained that the statements were false, it refused payment, and, the policy being void, the draft is without consideration.

It is settled that, if the plaintiff had no insurable interest, the policy never attached and the plaintiff cannot recover. *Amory v. Gilman,* 2 Mass. 1. And even if the draft had been honored, the defendant upon discovery of the fraud could have sued to recover the money back. *Merchants' Ins. Co.* v. *Abbott,* 131 Mass. 397, 399. *Moors* v. *Bird,* 190 Mass. 400, 410. It was undisputed that the record title stood in the name of the plaintiff's mother, subject to a mortgage to one Anderson. The question, however, whether the plaintiff had an insurable interest, was a question of fact. The jury would have been warranted in finding that on April 1, 1909, the plaintiff's mother acquired title to the premises on which shortly thereafter he began the erection of a house, the cost being borne partly by him and partly by her. It was occupied upon completion by them, and on September 22, 1909, he acquired the title from his mother and gave a first mortgage for $3,500 to a trust company and a second mortgage to his mother for a further sum of $5,000. On November 29, 1911, the second mortgage was foreclosed, and she became vested with the title. At the date of foreclosure "there was an agreement between his mother and himself with regard to the title to the property; . . . he stated to his mother that if she foreclosed it would be with the understanding that if he . . . could pay her back her interest in the property covered by that mortgage she would transfer title back to the plaintiff again upon payment and satisfaction of the debt—his indebtedness to her . . ." The first mortgage was paid by her and discharged on July 12, 1912, and a mortgage was then placed running to Anderson, by whom no money was advanced and to whom no interest ever has been paid. The plaintiff paid "all expenses in connection with the property, taxes, water bills, street assessments, repairs and all expenses incidental to the taking care of a piece of property" until the fall of 1916 when "he had completed his agreement with his mother of paying the indebtedness, . . . and in 1917 he entered into occupation of the property" where he resided until the fire occurred.

While the legal title does not appear to have been in the plain-

tiff on May 8, 1917, when the policy was obtained, or on September 12, 1917, the date of the fire, he had an equitable interest which was insurable to the full value of the policy, although the contract of purchase was not in writing. *Rider* v. *Ocean Ins. Co.* 20 Pick. 259. *Wainer* v. *Milford Mutual Fire Ins. Co.* 153 Mass. 335. *Fowle* v. *Springfield Fire & Marine Ins. Co.* 122 Mass. 191. *Hinckley* v. *Germania Fire Ins. Co.* 140 Mass. 38, 48. The mortgage to Anderson also could be found to be a nullity, and, not being a valid incumbrance, it was not as matter of law a material fact or circumstance, the non-disclosure of which in the application avoided the policy or rendered the proof of loss, where it is not mentioned, a fraudulent misrepresentation. *Taylor* v. *Aetna Ins. Co.* 120 Mass. 254. *Jenks* v. *Liverpool & London & Globe Ins. Co.* 206 Mass. 591. *Koeski* v. *Springfield Fire & Marine Ins. Co. ante*, 23.

The defendant's first request, that, upon all the evidence, the plaintiff could not recover, could not have been given. The fourth request, that the plaintiff had no insurable interest in the premises, and the policy was void *ab initio*, and the sixth request that the policy was void and therefore there was no consideration for the draft in so far as not covered by the instructions, also were denied rightly.

The seventh request, "If you find that the policy issued . . . was void there was no consideration for the draft . . . and you must find for the defendant" should have been granted. The jury, notwithstanding it was uncontradicted, could disregard the entire evidence of the plaintiff relating to his title and interest in the property as untrustworthy, and, if they did so, there was no proof of an insurable interest, and, the plaintiff, on whom rested the burden of proof, having failed on all the evidence to show any valuable consideration, the action on the draft could not be maintained. R. L. c. 73, § 41. *Lindenbaum* v. *New York, New Haven, & Hartford Railroad*, 197 Mass. 314, 323. *Simpson* v. *Davis*, 119 Mass. 269, 271.

It is argued in the plaintiff's behalf that he was under no obligation to receive the draft in payment of his loss, which was for the amount awarded by the referee, but having accepted it in satisfaction of all demands and claims, coupled with the surrender and cancellation of the policy, the transaction of itself furnishes a

sufficient consideration to support the defendant's promise. But the instrument is not under seal, which imports a consideration. *Graham* v. *Middleby*, 185 Mass. 349, 355. It also would be sufficient if it appeared that the draft and receipt were exchanged in compromise of the plaintiff's claim. *Kennedy* v. *Welch*, 196 Mass. 592. *Kerr* v. *Lucas*, 1 Allen, 279. The plaintiff moreover yielded nothing, but received the full amount of the award, the sufficiency of which appears to have been unquestioned, while the defendant was not relieved from any detriment. It liquidated its obligation without diminution. In the absence of such conditions the receipt, draft, and surrender were only the ordinary incidents of a settlement between the insurer and the policy holder where the validity of the policy and the right of the assured to the award is at the time not disputed by either party. *Batchelder* v. *Sturgis,* 3 Cush. 201, 203. *Barlow* v. *Ocean Ins. Co.* 4 Met. 270. ·

The exceptions to the admission of evidence not having been argued must be treated as waived, leaving only the exceptions relating to portions of the instructions concerning the effect of the alleged misrepresentations in the proof of loss which, if established, the defendant contended avoided the policy. We do not however deem it necessary to discuss them as the questions raised may assume a different aspect and be presented in a different form at the new trial.

*Exceptions sustained.*