OLIVER D. SEWALL, administrator *de bonis non* with the will annexed, *vs.* EDWARD E. ELDER, executor, & others.

LANCASTER H. HEUSTIS, administrator, *vs.* SAME.

EDWARD E. ELDER, executor, *vs.* LANCASTER H. HEUSTIS, administrator, & others.

Middlesex.　November 9, 1931. — June 28, 1932.

Present: RUGG, C.J., PIERCE, WAIT, & FIELD, JJ.

*Devise and Legacy*, Life estate, Vested or contingent. *Executor and Administrator.* Words, "To remain," "Then."

The accepted rule for the interpretation of a will is to ascertain the intent of the maker as gathered from the testamentary language read in the light of the knowledge possessed by him and of the material circumstances attendant upon him at the time, attributing due weight to all the words used, not stressing provisions of doubtful meaning but searching for a general plan from a survey of the whole instrument, presumably designed to express a consistent and harmonious purpose, and then to give effect to that intent unless prevented by some rule of law. Per RUGG, C.J.

A testator named his only child, a son, executor of his will and exempted him from providing sureties on his bond, and by the first clause of his will gave the son all his estate "for and during the term of his natural life, for his proper use, benefit and support and maintenance, he to have the income thereof and also as much of the principal sum as he may deem necessary for the comfortable support of himself or of his family." By a fifth clause he made provision that, if the son's wife survived the son and she should receive from the son's estate less than $5,000, the difference should be made up from the testator's estate, and, "to further insure her competent support," he directed that, "as soon after my decease as may be," the executor deposit in a savings bank $1,000 "there to remain until the death of my son . . . and that five years thereafter there be paid from said deposit the sum of two hundred dollars to . . . [the son's wife]. I also direct that for the four ensuing years a like amount be paid to her each year from said deposit and all accrued interest on the deposit is to be paid

to her the following year. · Should her death occur either before or after the first payment becomes due then I direct my executor to pay to my grand daughter . . . whatever remains of the original deposit aforesaid and the accrued interest; but in case said . . . [granddaughter] is not living then said remainder is to be paid" for the benefit of a certain church. The granddaughter survived her mother and the son survived both. He made the deposit of $1,000 immediately upon his appointment as executor, but received all the dividends thereon during his life. *Held,* that

(1) The first clause of the will, which emphasized to the extent of redundancy the intention of the testator that the son was to have the use of the entire estate of the testator during his life and all the income thereof, must be considered with the fifth clause;

(2) So considered, there was no testamentary intent expressed in the will that all dividends from the beginning on the savings bank deposit should accumulate until final distribution, but the intent disclosed by the will as a whole was that the son was entitled to the dividends payable on that deposit during his life under and by virtue of the unequivocal gift in clause first of the will;

(3) On the death of her mother, the granddaughter took a vested remainder in the principal of the fund, and the provision for the benefit of the church never took effect.

PETITION for instructions, filed in the Probate Court for the county of Middlesex on December 27, 1928, and afterwards amended, by the administrator with the will annexed of the estate not already administered of Charles Cummings, late of Medford; also a

PETITION, filed in the same court on May 15, 1930, by the administrator of the estate of Alice J. Heustis (formerly Cummings) that the first to seventh accounts of George D. Cummings, who in his lifetime was executor of the will of Charles Cummings, be reopened; also a

PETITION, filed in the same court on November 5, 1930, by the executor of the will of George D. Cummings, for the allowance of a substituted eighth account of said George D. Cummings as executor of the will of Charles Cummings.

The petitions were heard by *Harris,* J., upon agreed statements of facts. Material facts are stated in the opinion. By order of the judge, a final decree was entered on the first petition, instructing the petitioner that the testator's granddaughter Alice J. Cummings (afterwards Heustis) on the death of her mother became entitled to the principal sum of the deposit of $1,000 together with the interest thereon

accrued from May 24, 1907, and that the provision as to the postponement of the payment of any part of said deposit until five years after the death of said George D. Cummings was solely for the benefit of Anna F. Cummings and did not operate to postpone the payment to said Alice J. Cummings if she survived her mother; and that the petitioner pay over to Lancaster H. Heustis as administrator of the estate of said Alice J. Heustis, formerly Alice J. Cummings, deceased, the principal sum of said deposit, together with the interest accrued thereon as aforesaid. On the other petitions, orders modifying the accounts were made. The executor of the will of George D. Cummings and the treasurer of the Mystic Congregational Church appealed.

The case was submitted on briefs.

*E. E. Elder*, for Elder, executor.

*H. R. Morse*, for treasurer of Mystic Congregational Church.

*A. L. Taylor & E. C. Parks*, for Heustis, administrator.

RUGG, C.J. The questions here presented involve the interpretation of the will of Charles Cummings. He died testate in 1907 leaving a son, George D. Cummings, whose wife was Anna F. Cummings and whose daughter was Alice J. Cummings. Anna F. Cummings died in 1916. Alice J. Cummings married Lancaster H. Heustis and died in 1923 leaving her husband (who was appointed administrator of her estate) and three minor children. George D. Cummings, having survived both his wife and daughter, died in 1928. He was appointed, in 1907, executor of the will of the testator and continued to be such executor until his death. The testator by the first clause of his will gave to his son, George D. Cummings, "all my estate, real, personal or mixed and wherever found and however situated, to have and to hold the same for and during the term of his natural life, for his proper use, benefit and support and maintenance, he to have the income thereof and also as much of the principal sum as he may deem necessary for the comfortable support of himself or of his family." The fifth clause of the will is in these words:

"If after the decease of George D. Cummings his wife Anna F. Cummings survives him and her share of his estate does not amount to the sum of five thousand dollars I hereby direct my executor to immediately pay to her from my estate the difference between what she received from her husband's estate and the said sum of five thousand dollars. And to further insure her competent support, I hereby direct that my executor deposit, as soon after my decease as may be, in the Medford or some other Massachusetts Savings Bank the sum of one thousand dollars there to remain until the death of my son George D. Cummings and that five years thereafter there be paid from said deposit the sum of two hundred dollars to Anna F. Cummings. I also direct that for the four ensuing years a like amount be paid to her each year from said deposit and all accrued interest on the deposit is to be paid to her the following year. Should her death occur either before or after the first payment becomes due then I direct my executor to pay to my grand daughter Alice J. Cummings whatever remains of the original deposit aforesaid and the accrued interest; but in case said Alice J. Cummings is not living then said remainder is to be paid to the Treasurer of the Mystic Church in Medford for the benefit of said Church." George D. Cummings complied with the direction in clause fifth of the will by depositing in a savings bank in May, 1907, the sum of $1,000. That sum remained on deposit until his death. It was in his name as executor of the will of the testator. He filed a permanent dividend order with the bank under which all dividends accruing on the deposit during his life were sent to him and were received and used by him personally. The matter to be decided is the rights of the respective parties to this deposit and the dividends that accrued thereon both before and after the death of George D. Cummings.

The hearing was upon an agreed statement of facts. Therefore this court considers the questions involved without reference to the decision of the trial judge. *Sanderson* v. *Norcross*, 242 Mass. 43, 44.

The accepted rule for the interpretation of a will is to

ascertain the intent of the maker as gathered from the testamentary language read in the light of the knowledge possessed by him and of the material circumstances attendant upon him at the time, attributing due weight to all the words used, not stressing provisions of doubtful meaning but searching for a general plan from a survey of the whole instrument, presumably designed to express a consistent and harmonious purpose, and then to give effect to that intent unless prevented by some rule of law. *Williams* v. *Bradley*, 3 Allen, 270, 280. *Polsey* v. *Newton*, 199 Mass. 450, 453. *Ware* v. *Minot*, 202 Mass. 512, 516. *Eustace* v. *Dickey*, 240 Mass. 55, 72–73. *Temple* v. *Russell*, 251 Mass. 231, 235–236. *Anderson* v. *Bean*, 272 Mass. 432, 438.

The first clause of the will contains words of unmistakable import to the effect that George D. Cummings is to have the use of the entire estate of the testator during his life, and all the income thereof. This thought is emphasized to the extent of redundancy. Such a positive provision perhaps may in conceivable instances be cut down by a subsequent repugnant clause. *Shattuck* v. *Balcom*, 170 Mass. 245, 251. But the phraseology here used in its context goes far toward expressing a purpose intended to be regnant over other parts of the instrument. It was the provision made by the testator for his only child, a son, who at the date of the will was about fifty years old. Upon that child rested the burden of supporting his wife and daughter, who were the chief beneficiaries under the fifth clause of the will. In him the testator manifestly had great confidence, for he was named executor and exempted from giving sureties upon his official bond. The first clause must be considered in connection with the fifth clause.

The first sentence of the fifth clause may be disregarded because it never became operative, since Anna F. Cummings did not survive George D. Cummings. The rest of that clause relates to the deposit of $1,000 in the savings bank. That provision was designed primarily for the benefit of Anna F. Cummings. The requirement that the de-

posit remain in the savings bank until the death of George D. Cummings, and thereafter be applied solely for the benefit of his wife Anna and his daughter Alice, bears indication of testamentary intent that the provision of clause first to the effect that George D. Cummings might use as much of the principal sum as he thought necessary should not be applicable to this deposit, at least not until the rest of the estate was exhausted. That question, however, does not arise because George D. Cummings kept the original deposit of $1,000 intact. Clause fifth, however, draws a distinction between the original deposit and the interest thereon. The direction to the executor is to "deposit . . . the sum of one thousand dollars" in some savings bank "there to remain until the death of my son." As matter of grammatical construction the direction "to remain" is confined to the deposit. No express reference is found in the clause to the interest on the deposit during the time it is required so to remain. The payments to Anna F. Cummings, beginning with $200 at the expiration of five years after the death of her husband, are to be made "from said deposit." The like payment of the same sum in each of the four ensuing years is to be made "from said deposit." It is to be observed that these five payments would precisely exhaust the original deposit. "All accrued interest on the deposit" was to be paid her in the following or tenth year after the death of her husband. At the usual savings bank rate, the interest likely to accrue within the time posited in this clause to elapse after the death of George D. Cummings would slightly exceed $200. Thus the first five payments would be of the same sum and the final payment would not vary very much from that sum. "Accrued interest" aptly describes the income from the deposit after the death of the life tenant, George D. Cummings. The same words in the fourth sentence of the clause are used in the same sense. *Clark* v. *State Street Trust Co.* 270 Mass. 140, 151. The fifth clause considered as an entirety does not unequivocally express the idea that all dividends payable on the savings bank deposit should be added to the principal and accumulate from the time it

was made until the time for final distribution arrived. That purpose could have been readily stated if desired. Clause fifth must be read in conjunction with the positive and sweeping right to the income of the entire estate given by the first clause to George D. Cummings. Considering both clauses together, we are of opinion that there is no testamentary intent expressed in the will that all dividends from the beginning on the savings bank deposit should accumulate until final distribution. On the contrary, the testamentary intent disclosed by the will as a whole is that George D. Cummings was entitled to the dividends payable on that deposit during his life under and by virtue of the unequivocal gift in clause first of the will. By this construction there is no repugnancy between clauses first and fifth, but a consistent scheme of benefaction is developed. It is to be noted, also, that several accounts filed by George D. Cummings as executor showing these payments of interest to himself were assented to in writing by his wife and daughter. This is some indication that the three gave this interpretation to the will.

It follows from this interpretation of the will that there was no occasion to reopen the accounts first to seventh, both inclusive, of George D. Cummings as executor of the will of the testator, and to modify the eighth and final account as filed by Edward E. Elder, executor of the will of George D. Cummings, because there was no error in the accounts as filed touching the disposition of the income derived during the life of George D. Cummings from the deposit of $1,000 in the savings bank made pursuant to the fifth clause of the will. Such income was rightly paid to George D. Cummings as beneficiary for his life.

The provisions of clause fifth as to the principal of the deposit in the savings bank remain to be determined. The terms of the second sentence of that clause are mandatory and peremptory to the effect that the deposit shall be made as soon after the decease of the testator "as may be" and that it shall there remain until the death of the son. Those two directions are dominant concerning that deposit. They govern all that follows on the subject. This gift was pri-

marily for the benefit of Anna F. Cummings. But it was not to take effect in possession and enjoyment until after the death of her husband. The gift to her was also contingent upon surviving her husband, and was subject to be completely divested in the event that she did not survive him. *Clarke* v. *Fay,* 205 Mass. 228. She having died twelve years before her husband, her interest in the fund came to an end. The provision for deferred payments, being for her benefit, likewise came to an end. The rest of the fifth clause made provision to take effect in the happening of that contingency. Her death having occurred before the first payment became due to her, the testamentary direction was that whatever remained of the original deposit and the accrued interest be paid to Alice J. Cummings. The direction as to the payment to her could not take effect at once because the fund was to be kept intact until the death of her father, George D. Cummings, and he was entitled to the income so long as he lived. But Alice J. Cummings being alive at the death of her mother, the contingency upon the happening of which she would be divested of all interest in the fund, viz., not being alive at the death of her mother, came to an end. She then had a vested remainder. Only the enjoyment of it in actual possession was postponed until the death of her father and was subject to his life estate. The fact that she was alive at the death of her mother, and that thus the remainder vested in her, had the effect also of divesting the Mystic Church in Medford of any possible interest in the fund. The church by the terms of the final sentence of the clause could take only in the event that Alice J. Cummings was not living at the death of her mother. Whether the word "then," occurring twice in that sentence, be regarded as relating to time, *Brown* v. *Spring,* 241 Mass. 565, 568, or as used conjunctively, *Hedge* v. *State Street Trust Co.* 251 Mass. 410, 413, makes no difference with the construction to be given to the clause as a whole.

It follows from this analysis and interpretation of the first and fifth clauses of the will that the estate of George

D. Cummings has no present interest in the deposit in the savings bank.   His rights therein ceased with his death.

The result is that, in the petition for instructions, the decree must be modified by striking out the first paragraph and by changing the second paragraph so as to direct the payment of the deposit in the savings bank with dividends declared thereon since the death of George D. Cummings to the administrator of the estate of Alice J. Heustis, formerly Alice J. Cummings, and that costs of this appeal (in addition to the costs in the decree) be in the discretion of the Probate Court.   The decree on the petition to reopen the first to seventh accounts, both inclusive, of George D. Cummings as executor, is reversed and a decree is to be entered denying that petition.   The decree allowing the eighth account is reversed and a new decree not inconsistent with this opinion is to be entered allowing that account.

*Ordered accordingly.*