SHIRLEY H. BRAMLEY & another *vs.* MILDRED ETHEL WHITE & others.

Hampden.     September 22, 1932. — January 3, 1933.

Present: RUGG, C.J., CROSBY, WAIT, DONAHUE, & LUMMUS, JJ.

*Devise and Legacy*, Life estate.

A testator by a will, whose form, language and spelling indicated that it was not the product of an experienced drafter of wills, bequeathed and devised to his widow "all my real and personal property, meaning that all my possessions I leave to her. At her death I request that what remains be devided [*sic*] equally among my three children," naming them. There followed certain recitals relating to capital stock in a certain corporation in which he was interested with one whom he called his partner, and the will continued, "it is from this stock that I expect my wife to obtain an yearly income. If at any time she desires to dispose of . . . [that] stock . . . I suggest that she advise with my partner." The widow was a second wife, by whom the testator had two children, who survived him. The widow and one of those children were nominated as executors. The oldest of the three children named in the will was by the first wife, who died when that child was young. He had been left with grandparents in England until he was fifteen years of age. Thereafter he lived with the testator until he married, when he lived nearby and, never being able to earn much money, was helped by the testator. Two years after the will was made and two years before the testator died

that son died, leaving two children surviving him. The testator's widow died intestate five years after the testator, leaving her two children surviving her and, undisposed of, some of the property which had been part of the testator's estate and which the children of the oldest child of the testator by a petition in equity in the Probate Court sought to share. *Held*, that

(1) The will, read as a whole in connection with the circumstances which the testator must have had in mind when he executed it, adequately manifested the purpose that his widow should take the property which he left with the right to use it for her life, and the further purpose that any of that property which should be left at her death should be divided among the testator's three children;

(2) Under G. L. (Ter. Ed.) c. 191, § 22, the petitioners were entitled to the share given to their father by the will.

PETITION, filed in the Probate Court for the county of Hampden on December 17, 1930, which all parties agreed should be treated as if its sole subject matter were the construction of the will of Walter Bramley, late of Chicopee Falls, and which was brought by two children of a son of the testator by his first wife against two children of the testator by a second wife, who also were the administrators of her estate.

It appeared that the will was executed on February 24, 1920; that the father of the petitioners, Walter Gwilliam Bramley, died on August 1, 1922; that the testator died on October 16, 1924, and his widow, the mother of the respondents, died on November 21, 1929. Other material facts are stated in the opinion.

By order of the judge, there was entered a final decree "that the will created a life estate in Carrie B. Bramley and that the balance of the Walter Bramley estate remaining . . . at her death be shared equally; one third each to the two children aforesaid of Walter Bramley, him surviving and one sixth each to the children of Walter Gwilliam Bramley, deceased, the petitioners herein by right of representation." The respondents appealed.

The case was submitted on briefs.

*Harlan P. Small & H. Robinson*, for the respondents.

*H. B. Newton, H. E. Weir, & S. D. Foster*, for the petitioners.

DONAHUE, J.   The will of Walter Bramley, which was executed on February 24, 1920, devised and bequeathed to his wife Carrie Bramley "all my real and personal property, meaning that all my possessions I leave to her. At her death I request that what remains be devided [*sic*] equally among my three children Walter Gwilliam Bramley . . . Harry Barratt Bramley . . . and Mildred Ethel White . . . ." The will recited that The Taylor Bramley Company, in which he was interested with one Taylor, was undergoing a reorganization, "and we hope that in the near future the company will be able to pay dividends on the common stock and it is from this stock that I expect my wife to obtain an yearly income. If at any time she desires to dispose of . . . [that] stock . . . I suggest that she advise with my partner Albert E. Taylor, who I am sure will give her the true state of affairs and advise her accordingly." He nominated his wife and his son Harry B. Bramley as executors and suggested that "they council with my partner Albert E. Taylor in regard to matters as I have confidence in his ability as a councilor." The testator's widow, who was his second wife and the mother of Harry Barratt Bramley and Mildred Ethel White, died intestate on November 21, 1929. Certain property received by his wife under the will of her husband had not been used or disposed of by her at the time of her death and at present is in the possession of her administrators, Harry Barratt Bramley and Mildred Ethel White, either in that official capacity, or individually.

Walter Gwilliam Bramley, who was a son of the testator by his first wife, died before his father leaving two children. By a next friend they brought a petition in the Probate Court naming Harry Barratt Bramley and Mildred Ethel White individually and as administrators of the estate of their mother, Carrie Bramley, as respondents, in which petition each seeks to obtain one sixth of such of the property left by Walter Bramley as was in the possession of Carrie Bramley at the time of her death. By agreement of all parties the petition was treated as if its sole subject matter were the construction of the will of Walter Bramley.

The case was heard in the Probate Court in part on "oral testimony as to the circumstances of the making of the will and the relations of the parties." The testimony is not reported. The judge in response to a request for a report of the material facts found by him, in addition to facts above recited, found that "Walter Gwilliam Bramley was left with his grandparents in England after the death of his mother who died when he was young and it was not until he was fifteen that he came to this country and lived with his father. He married and left his father's house at the time but lived nearby and he and his father were on friendly terms. He never was able to earn much money and was assisted by his father especially after his marriage and the birth of his two children. The other children, children of a second marriage, spent their entire childhood at home and remained there until their marriage."

The case comes before us on the appeal of the respondents from a decree of the Probate Court which ordered and decreed that the will created a life estate in Carrie Bramley and that the property of Walter Bramley remaining unused by her at the time of her death be shared one third to each of the two children of the testator by his second marriage and one sixth to each of the petitioners as children of Walter Gwilliam Bramley, deceased, by right of representation. See G. L. (Ter. Ed.) c. 199, § 22.

It is contended by the petitioners that the testator's wife took under the will an interest for life; by the respondents that she took an absolute interest. If by his will the testator made an absolute gift to his wife, a gift over of the same property would not be valid, *Dallinger* v. *Merrill*, 224 Mass. 534, 539, *Ide* v. *Ide*, 5 Mass. 500, but this rule cannot operate if it is found that the testator has adequately manifested in his will the intent that his wife should not take an absolute interest. *Crowell* v. *Chapman*, 257 Mass. 492, 496. *Kemp* v. *Kemp*, 223 Mass. 32, 35. Although words of inheritance are not necessary to create an absolute estate by will (*Bassett* v. *Nickerson*, 184 Mass. 169, 173), and it is not essential that the words "for life" or their precise equivalent be used in order to create a life

estate (*Temple* v. *Russell*, 251 Mass. 231), in the absence of
words of either sort descriptive of the quantity of an inter-
est given, a testator's intent must be determined by con-
struction. *Dorr* v. *Johnson*, 170 Mass. 540, 542. *Ware* v.
*Minot*, 202 Mass. 512, 517.

Following the accepted rule for the interpretation of a
will we have examined the language of Walter Bramley's
will, reading the document as a whole and in the light of
the circumstances existent and known to him at the time
of its execution. Whatever intent of the testator that
process discloses must here govern our conclusion unless it
be an intent which runs counter to some controlling rule
of law. *Sewall* v. *Elder*, 279 Mass. 473, and cases cited.

The body of the instrument here presented for construc-
tion in form, language and spelling indicates that it was
not the product of an experienced drafter of wills. The
words "I bequeath and devise as follows: To my wife
Carrie Bramley, all my real and personal property," stand-
ing alone would be sufficient to pass the fee in any realty
and an absolute interest in any personalty which the testa-
tor at his death owned. But those words do not stand alone.
In the first place the testator apparently was not entirely
content with that language and proceeded to give a defi-
nition by adding the further words: "meaning that all
my possessions I leave to her," selecting for the word of
gift "leave" which is less formal and precise, less settled
in legal significance than the words "bequeath and devise."
The entire expression of the gift to his wife does not stand
alone. It is followed immediately by the provision referring
to his children. In the next paragraph the testator's mind
again recurs to his wife and to a portion of his property,
The Taylor Bramley Company stock. The expressions of
his expectancy that dividends on that stock would provide
his wife with an annual income and of his understanding
that his gift to her was such that she had the right to dis-
pose of the stock, were unnecessary if he had given her
absolute ownership. (*Kent* v. *Morrison*, 153 Mass. 137,
139, *Baker* v. *Thompson*, 162 Mass. 40, 42.) Without
overstressing these particular provisions, it is fair to say

that they are somewhat more consistent with the construction that he intended to give her a life estate than with the construction that there was an intent to give her absolute ownership. The fact that a donee has the power to sell or otherwise dispose of property given by will does not in itself prevent the gift being construed as a life interest. *Dana* v. *Dana,* 185 Mass. 156, 158. *King* v. *Walsh,* 250 Mass. 462, 466.

Read as a whole the will discloses a further purpose than the making of provision for the testator's wife. It contemplates his wife surviving him since the contingency of her death before his is not provided for. His purpose when he executed the will manifestly looked beyond her lifetime and her need of his property, it visioned the possibility of something remaining after her worldly needs were served. He expressed a further purpose when he said, "At her death I request that what remains be devided [*sic*] equally among my three children" whose names and places of residence are stated and one of whom he made a coexecutor with his wife. This is not a suggestion or recommendation made to the original beneficiary, his wife. She is not told to make the division or to provide by a will for the designated distribution. In this respect this case differs from cases like *Hess* v. *Singler,* 114 Mass. 56, and *Dexter* v. *Young,* 234 Mass. 588, where the wills construed contained such provision. The time of the division which the testator here had in mind was a time after the death of his wife. A division as of such a time if not made by her will could be made only by his legal representatives. It is a reasonable construction to hold that it was to them and not to his wife that the words presently being considered were directed. If it was the testator's intent that his wife should take an absolute interest in his property, the provision referring to his children was unnecessary. The children born of his second marriage would be the heirs of their mother and there is nothing to indicate that the testator needed to make any provision for them in the event of their mother's death. But he had another child, his oldest son, born of the long dead wife of his youth. In the absence

of a provision in his will this son, whom the testator in his lifetime had helped and cherished, would take nothing if, after the wife of the testator had made such use of his property as she wished and died, there was some of it remaining. The sentence referring to his three children clearly expresses the thought of equality of treatment so far as his property was concerned. If the testator was to be sure that his oldest son would stand in such equality with the other two children it was necessary that it should be expressed in his will. The reason for the insertion of the provision as to the children seems to have been that, when the purpose of providing for his wife had been accomplished, his oldest son should share with the other children any property that remained.

A manifested intent is not to be thwarted by attaching a "hard and fast meaning to particular words apart from their connection and the atmosphere of the instrument in which they are used." *Poor* v. *Bradbury*, 196 Mass. 207, 209. The proper rule for the construction of a will does not "permit some of the words of a will to contravene an intent fairly to be deduced from a study of the will as a whole and of the circumstances in the light of which it was executed." *Crowell* v. *Chapman*, 257 Mass. 492, 495. According to the context in which it is used such a mild word as "desire" may be interpreted to "mean a command, in a polite form" in one will (see *Weber* v. *Bryant*, 161 Mass. 400, 403), and in another will merely a recommendation and not a command (see *Barrett* v. *Marsh*, 126 Mass. 213, 216). So, the interpretation of the word "request" in another will addressed to one to whom the estate was given by words of inheritance (see *Durant* v. *Smith*, 159 Mass. 229), has no compelling potency in the construction of the will before us where the language of the gift to the testator's wife does not contain such words. The case of *Knibbs* v. *Knibbs*, 236 Mass. 182, on which the respondents strongly rely, does not govern the decision of the present case. In the cited case, page 184, the language of the will expressing the gift to the testator's wife — "to have and to hold, spend whatever pleases her" —

was construed as creating an absolute gift of realty and of personalty. This conclusion having been reached the later words referring to his niece, his grandson and his children were interpreted as expressions not obligatory on the wife. That case was before this court on a reservation upon the bill and answers. An examination of the original papers shows a record bare of recital of any circumstances existent and known to the testator at the time of the execution of the will to which the court might have resorted for help in the determination of the testator's intent. The construction there had to be made solely from an examination of the instrument itself. In the case now before us not only is the language stating the gift to the wife less conclusive and the words referring to the children more imperative, but, what is of greater significance, we have the circumstances under which the will was made which here furnish helpful light in the ascertainment of the testator's intent.

We think that the will read as a whole in connection with the circumstances which the testator must have had in mind when he signed it adequately manifests the purpose that his wife should take the property which he left with the right to use it for her life, and the further purpose that any of that property which should be left at her death should be divided among the testator's three children. "By emphasizing some parts of the will to the exclusion of others, or by putting one part of the testator's intent above another, a different conclusion might be reached. But we have no right to do that. All the words of the will are satisfied and given some weight only" by the construction here adopted. *Ware* v. *Minot,* 202 Mass. 512, 518. A proper decree was entered in the Probate Court.

*Decree affirmed.*