EMMA C. LORD & others *vs.* ALPHONSO H. SMITH & others.

Essex.   January 8, 1936. — February 26, 1936.

Present: RUGG, C.J., CROSBY, FIELD, LUMMUS, & QUA, JJ.

*Devise and Legacy,* Life estate, Remainder, Power.   *Words,* "Sold," "Exchanged," "Mortgaged," "Otherwise disposed of."

Upon a construction of all the words used by a woman in her will, a specific devise of land to her husband for life "with full power to sell, mortgage, exchange, or otherwise dispose of the same and to give good title thereto to the said premises, and to use and dispose of the proceeds therefrom in any manner he may choose for his own comfort, pleasure, and benefit," and with a remainder over "in the event of the death of" the husband "without having sold, mortgaged, exchanged, or otherwise disposed of said premises," the equity of redemption from a mortgage given by the husband in his own name, without intent thereby to dispose of the equity, passed to the remainderman on the death of the husband.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Essex on July 24, 1935.

Upon request by the parties, *Lummus,* J., without making a decision, reported the suit to the full court for determination upon the pleadings and an agreement as to facts.

*R. Wait,* (*B. Aldrich* with him,) for the plaintiffs.

*W. S. Downey,* for the defendant Smith.

*J. A. Boyle, pro se.*

CROSBY, J. This is a bill in equity which was reserved and reported by a justice of this court for determination by the full court, under G. L. (Ter. Ed.) c. 231, § 111. The purpose of the bill is to settle the title to a certain parcel of real estate situated in Vineyard Haven in this Commonwealth. An agreement between the parties is printed in and made a part of the record.

It appears that one David Smith owned a certain lot of land with a dwelling house thereon in the village of Vineyard Haven (part of the town of Tisbury) in this Commonwealth, and that he occupied the premises as his residence until his death; title thereto then passed to his daughter, Eliza C. Lord. Thereafter the premises were occupied as a residence by her and her husband, Edward C. Lord. She died testate and her will was duly admitted to probate on March 7, 1924. It contained among others the following clauses: "Second: I give and devise the premises now occupied by me as a residence in the village of Vineyard Haven, and which was formerly the residence of my father, David Smith, unto my husband Edward C. Lord, for and during the term of his natural life with full power to sell, mortgage, exchange, or otherwise dispose of the same and to give good title thereto to the said premises, and to use and dispose of the proceeds therefrom in any manner he may choose for his own comfort, pleasure, and benefit. But in the event of the death of my husband without having sold, mortgaged, exchanged, or otherwise disposed of the said premises, I hereby give and devise the same unto Alphonso H. Smith of New Bedford, Massachusetts, and in the event of his death previous to my own demise, to the legal heirs of said Smith then living. Third:

I give and bequeath all my household goods and furniture unto my husband, Edward C. Lord in the same manner provided in the clause above, and in the event of his death without having disposed of the same, I give and bequeath the said goods and furniture unto Alphonso H. Smith, and in the event of his death previous to my own demise, to the legal heirs of said Smith then living. Fourth: I give and bequeath two and one-half shares (2½) of the Capital Stock of the Vineyard Haven Wharf Co., registered on the books of the company in my name unto my husband Edward C. Lord, to enjoy the income therefrom during the term of his natural life, and at his death or in the event of the death of my husband previous to my own demise I give and bequeath the said stock unto Millicent C. Smith of New Bedford, Massachusetts, daughter of Alphonso H. Smith. Fifth: All the Rest and Residue of my estate of which I may die seized or possessed or entitled to be the same, real, personal, or mixed I give, devise, and bequeath unto my husband Edward C. Lord.''

Eliza C. Lord was survived by her husband Edward C. Lord, by the defendant Alphonso H. Smith and by Millicent C. Smith. Thereafter, under date of March 28, 1924, Edward C. Lord executed a mortgage to the Martha's Vineyard National Bank for the sum of $2,500 upon the real estate above referred to. The note and mortgage were signed ''Edward C. Lord.'' The property so mortgaged had at that time, and still has, a value of not less than $6,500. The mortgage was recorded; it is outstanding, and the principal of the note is overdue, and has not been paid in full. The note was transferred by the bank to James A. Boyle, one of the defendants, under date of May 17, 1935, and immediately thereafter he made an entry upon the property for the purpose of foreclosing the mortgage under G. L. (Ter. Ed.) c. 244, § 1. Edward C. Lord duly qualified as executor of the will of Eliza C. Lord, and his first account as executor for the period March 7, 1924, to March 27, 1925, was allowed by the Probate Court on June 2, 1925. Subsequent to April 1, 1924, Edward C. Lord married the plaintiff Emma C. Lord and resided with

her on the property above referred to until his death on October 6, 1934. He died intestate, without issue, and left as his sole heirs and next of kin the plaintiffs, Emma C. Lord (his widow), J. Arthur Lord (his brother), and Mary Cheever Lord (his sister). His estate has not been represented as insolvent. The inventory of his estate contains the following statement in the schedule showing real estate: "Homestead not his as he did not exercise his right to sell during his life."

On April 1, 1924, Edward C. Lord opened a bank account in the Martha's Vineyard National Bank in the name "Est. Eliza C. Lord. E. C. Lord Exec." The first deposit of $2,424.50 therein was the proceeds of the mortgage. The account shows checks drawn in the same amount as shown in schedule B of the executor's account of Edward C. Lord, above referred to, except items 8, 20 and 23 which were cashed at approximately the dates shown in the schedule. In addition two checks (for $14.74 and $193.73 respectively) appear in the transcript of checks which aggregate the amount of item 8 of schedule B.

Subsequent to the death of Edward C. Lord the defendant Alphonso H. Smith entered upon the premises claiming that title thereto had vested in him under the provisions of the will of Eliza C. Lord. Thereafter the real property of Smith was attached by the defendants Cromwell and Robinson in an action of law which they had pending against him. Judgment was entered in that action in favor of Cromwell and Robinson, and execution issued to them in the sum of $1,281.74. Cromwell and Robinson delivered the execution to the defendant Dexter, who is the sheriff of the county of Dukes County. The execution is held by the sheriff and has not been satisfied. Cromwell and Robinson propose to sell the property as that of Smith in accordance with G. L. (Ter. Ed.) c. 236, § 26. This bill is brought to restrain the sale, and to declare that the plaintiffs are the heirs of Edward C. Lord, and that upon payment of the amount due on the mortgage by the plaintiffs to the defendant Boyle he be ordered to discharge the mortgage.

It was said in *Hull* v. *Adams*, 286 Mass. 329, at page 333: "The familiar rule to be followed in the interpretation of wills is that the intent of the testator is to be gathered from all the words used, construed according to the approved usage of the language read in the light of all material circumstances, and then effect is to be given to that intent unless prevented by some rule of law." It is plain that the husband of the testatrix was given a life estate in the real estate, and in the household goods and furniture, with power to dispose of them during his life. *Harris* v. *Knapp*, 21 Pick. 412. *Ladd* v. *Chase*, 155 Mass. 417. *Dana* v. *Dana*, 185 Mass. 156. *Reed* v. *Reed*, 194 Mass. 216, 217. *Griffin* v. *Kitchen*, 225 Mass. 331. *Homans* v. *Foster*, 232 Mass. 4. *Merchants Trust Co.* v. *Russell*, 260 Mass. 162, 164. *Bramley* v. *White*, 281 Mass. 343, 348. *Jernegan* v. *Marshall*, 290 Mass. 245, 247. He was also to receive the income from certain shares of stock for life, and all the rest of the estate was bequeathed to him absolutely. The provisions of the will make it plain that the testatrix intended that her husband should be the recipient of her bounty, and she desired that he should have the complete use and enjoyment of her property during his lifetime. After making provision for him the next persons she desired to share in her estate were Alphonso H. Smith, her relative, his daughter Millicent, and his legal heirs. It is apparent from clauses two and three of the will that the testatrix contemplated that there might possibly be a remainder with respect to the property mentioned in those clauses, and in that event she wanted Smith to have it. No power to dispose of this property by will was given to her husband. *Ford* v. *Ticknor*, 169 Mass. 276, 280. The fifth clause of the will disposing of the residue of the estate to her husband was in terms of absolute ownership.

The extent and meaning of the clauses in the will granting a power of disposal must be interpreted in view of all these provisions. The questions for decision are whether under the terms of the second clause a mortgage of the premises by the life tenant would extinguish all rights of

the remaindermen to a valuable equity which still remained, and whether the mortgage was executed by the life tenant pursuant to the power which was given to him. If it were not so executed, the rights of the remaindermen in the equity would not be cut off whatever the answer may be to the first question.

The pertinent words of the second clause of the will are: "But in the event of the death of my husband without having sold, mortgaged, exchanged, or otherwise disposed of the said premises, I hereby give and devise the same unto Alphonso H. Smith." This language is a repetition of the earlier statement in the same clause providing that the life tenant could "sell, mortgage, exchange, or otherwise dispose of" the premises and use the proceeds. The testatrix clearly intended that her husband could completely divest himself of any interest in the premises, or partially divest himself thereof by way of mortgage, and use the proceeds "for his own comfort, pleasure, and benefit." She intended to provide in her will for all possible ways in which he could use the premises to raise proceeds for his use, even to the extent of a sale of the property. In the remainder clause she simply repeated these various methods. The most that these clauses show is that the life tenant could use the premises in any way he desired to raise money even to the extent of complete disposal thereof. Nowhere does it appear, however, that a mortgage without more, amounting to an incomplete disposal, was to cut off the remainderman Smith from the equity which remained. The testatrix intended to provide for her husband to the fullest extent, but it is also manifest that what remained of the real estate was to go to the remaindermen. This would apply to a remainder after a sale of a part of the property, or to the equity remaining after a mortgage had been placed thereon. There is no general intent manifest to cut off the remaindermen by means of a mortgage when a valuable equity in the property remains. It is apparent that the remaindermen are to have the premises, if there is anything left. No disposition of the equity is made if the remaindermen do not get it. An

intention is shown in the will to dispose of these premises, but not under the residuary clause. See *Brattle Square Church* v. *Grant*, 3 Gray, 142, 159. It seems plain that the life tenant is to have the premises, and if anything remains it passes to the remaindermen. The language of the second part of the will is not violated in reaching this result. *Bramley* v. *White*, 281 Mass. 343, 349.

It is manifest that the words "sold" and "exchanged" mean a complete divestment of the property. The word "mortgaged," however, generally does not mean a complete divestment of property, but means only the creation of an estate, absolute in form, but intended to secure the performance of some act, such as the payment of money by the mortgagor, and to become void if the act is performed. If the mortgage is foreclosed, then a complete divestment would result. The language of the will in the second clause is susceptible of the meaning that it was a mortgage which would result in such complete divestment, and that it was so intended by the testatrix. Although decisions may be found wherein these words have been held to include a mortgage which has not been foreclosed, other decisions where the words have been used are held to mean a complete divestment of title. *Ham* v. *Missouri*, 18 How. 126, 133. The meaning depends upon the context in which they are used. The complete nature of the divestment intended by the words "sold" and "exchanged" is plain, and when read with the words "mortgaged," "or otherwise disposed of," the meaning that may be attached to "mortgaged" is a complete divestment resulting from the giving of the mortgage and a failure to perform. This construction is not contrary to the language used, but would seem to be in accord with the intention of the testatrix. When the whole clause is read together the general intent from the use of the words "otherwise disposed of" plainly shows a complete divestment of the mortgaged premises by the life tenant. This conclusion is supported by the language of the third clause of the will, wherein the furniture and goods were given to the husband of the testatrix on the same terms as the real estate, and then "in the event of his

death without having disposed of the same," to Alphonso H. Smith. It is evident that the words "disposed of" mean a complete divestment of title. The similarity of the words used and the presumed intention of the second and third clauses of the will are significant in this connection. If the life tenant did not entirely dispose of the premises and where, as here, a valuable equity was undisposed of, it would necessarily go to the remaindermen. It is clear that the testatrix intended by the second, third and fourth clauses of her will to dispose of the specific property therein described. It is equally clear that she meant to leave the rest and residue of her property to her husband. By the use of the words "or otherwise disposed of" in the second clause, following the words "without having sold, mortgaged, exchanged," she plainly intended that the defendant Smith should have the remainder, if it should not be "disposed of" by her husband whether such disposition occurred by reason of sale, mortgage, exchange or otherwise. The decision in *Clark* v. *Packard*, 9 Gray, 417, is not contrary to the conclusion reached in the present case. There was nothing to show that this equity had been or was intended to be disposed of by the life tenant. It follows that the remaindermen were entitled to the equity in the property which was undisposed of. See Sugden, Powers (8th ed.) 273.

There is nothing in the record to indicate that this equity was intended to be disposed of by Edward C. Lord in execution of the power which was given him by the will. If it were not the remaindermen would not be cut off. *Boston Safe Deposit & Trust Co.* v. *Prindle*, 290 Mass. 577, 584. The burden of proving a valid exercise of the power rests on the party claiming the execution. *Stocker* v. *Foster*, 178 Mass. 591, 602. The form of the mortgage did not indicate that it was meant to operate as a complete execution of the power. The husband of the testatrix was not only a life tenant with power of disposal, but was the executor of the will. He deposited the proceeds obtained by the mortgage in a bank in an account in the name of his wife's estate, and applied the money so received to a large extent to the payment of debts of the estate. This

was not a use of the proceeds as the will provided "for his own comfort, pleasure, and benefit" within the meaning of the will. It is apparent that in the distribution of the proceeds of the mortgage he was acting as executor, and not pursuant to the power given him by the will, which provided that "After the payment of my just debts and funeral charges" the various devises were to take effect. In .the absence of anything from which a clear intent to ·exercise the power given in the will may be inferred, it must be held that, since the life tenant did not dispose of the premises pursuant to the power given to him, the remaindermen will take. The case is analogous in principle to the decision in *Bratt* v. *Cox,* 290 Mass. 553, 558, and is governed by the result there reached.

It follows that by the terms of the will of Eliza C. Lord the defendant Alphonso H. Smith is entitled to the real estate described in the second clause of the will, subject to the mortgage given by Edward C. Lord to the Martha's Vineyard National Bank; and also subject to whatever rights the defendants Cromwell and Robinson may have by virtue of the judgment obtained by them against Smith.

*Ordered accordingly.*