*Municipal Court of the City of Boston*

No. 315024

# CLIFFORD KILFOYLE
## v.
# LIBERTY MUTUAL INSURANCE COMPANY

(Argued: May 2, 1975. Decided: August 19, 1975)

Case tried to *DeGuglielmo, J.*

Present: Lewiton, C.J., Canavan, Foster, J.J.

**Lewiton, C. J.** This is an action of contract to recover, under an insurance policy issued to him by the defendant, for damage to the plaintiff's automobile. "The trial evidence was introduced through an Agreed Statement of Facts", which is set forth in the report. The report also contains copies of certain "exhibits admitted into evidence" with no indication whether they were introduced as part of, or independently of, the Agreed Statement of Facts. The case is here for review of the trial court's finding for the defendant.

We summarize the facts in the Agreed Statement. On January 1, 1972, the defendant (Liberty) issued a Massachusetts Combination Motor Vehicle Policy, which included property damage coverage pursuant to G.L. c. 90, §34(0). It listed as the covered vehicle a 1970 Triumph then owned by the plaintiff. Sometime between January 1 and January 12, 1972 the plaintiff agreed to purchase a 1972 Ford Torino station wagon (Ford), from Atamian Ford (Atamian). On January 12, the plaintiff was notified that the Ford would be ready for delivery during the late afternoon of that day, but "would not be delivered until the purchase price was paid in full and delivery receipt signed."

At about 12:30 p.m. on January 12, 1972, the plaintiff went to Liberty's office, with information necessary for registration of the Ford, and informed a sales

representative of Liberty that he wished to transfer the registration on his automobile. At her request, he gave her a description of the Ford, including its vehicle identification number. A new "registration form" was then prepared for the Ford, and was given to the plaintiff who proceeded to the Registry of Motor Vehicles and there presented the "registration form". After paying the registration fee and sales tax, the plaintiff received his new, validated registration. No new plates were issued, because the original registration plates were to be attached to the Ford.

The plaintiff then left the Registry. While operating the Triumph, to which the original registration plates were still attached, he was involved in a collision at about 3:00 p.m., causing $1,200 damage to the Triumph. At about 5:00 p.m. the plaintiff, after notifying Liberty of the accident, proceeded to Atamian, where he signed the required papers and took delivery of the Ford.

Some days after the accident, Liberty notified the plaintiff that the policy issued by it did not cover the Triumph at the time of the accident, and it has since refused payment for the damage done to that vehicle. In a letter explaining its refusal to pay for such damage, Liberty stated that at the time of the accident, the plaintiff had retained ownership of the Triumph and was then "the owner of two cars—one of which, the 1972 Ford Torino was legally registered and insured", with no insurance on the Triumph.

On March 8, 1972 Liberty sent to the plaintiff his insurance policy containing a schedule of coverage thereunder for the period from January 1, 1972 to January 1, 1973, describing the *Triumph* as the insured vehicle, and setting forth a specific premium charge of $412.24 for such coverage.[1] On or about August 30,

---

[1] Although the Agreed Statement refers to the date of this schedule as March 8, 1972, the copy of the schedule attached to the report appears to be dated May 25, 1972.

1972, Liberty sent to the plaintiff an amended schedule of coverage under said policy,[2] describing the *Ford* as the insured vehicle, setting forth an additional premium charge of $78.32 and stating that its provisions were "in effect as of" January 13, 1972.

Though the plaintiff, in his application for registration of the Ford presented to the Registry of Motor Vehicles in the early afternoon of January 12, described himself as the owner of that vehicle, he did not in fact become the owner of it until about 5:00 p.m. on that date, some two hours after the accident in which the Triumph was damaged.

At the outset, we note that no requests for rulings appear to have been presented to the trial justice, nor does the report contain any express rulings which might be subject to review by this Appellate Division. Since we have no authority to review findings of fact, apart from challenged rulings of law, *Butler v. Cromartie,* 339 Mass. 4, 6 (1969); *Perry v. Hanover,* 314 Mass. 167, 169 (1943)) it would appear that the report should be dismissed for want of a reviewable issue. *Henry L. Sawyer Co. v. Boyajian,* 298 Mass. 415, 417-418 (1937); *Scano, Pet'r.,* 338 Mass. 7, 8 (1958); *White, Pet'r.,* 304 Mass. 677 (1939).

However, the parties and the trial justice may have treated the matter as a "case stated", in which event requests for rulings would have been unnecessary, and the trial court would have been required to enter such findings as were required by law. *Associates Discount Corp. v. Gillineau,* 322 Mass. 490, 491 (1948; *Richard D. Kimball Co. v. Medford,* 340 Mass. 727, 728 (1960); *Quincy v. Brooks-Skinner, Inc.,* 325 Mass. 406, 410-411 (1950). [24 LEGALITE 341]. Under such circumstances the decision of the trial court would be reviewable by us, even in the absence of reported rulings of law and we would consider the questions involved without

---

[2] The copy of the schedule attached to the Report appears to be dated "8/17/72".

reference to the decision of the trial justice. *Weinstein v. Green,* 347 Mass. 580, 581 (1964); *McHale v. Treworgy,* 325 Mass. 381, 382 (1950); *Sewall v. Elder,* 279 Mass. 473, 476 (1932).

In view of the ambiguous report before us, we shall consider the issues raised on the assumption that this was a "case stated".

The decisive question is whether, at the time of the accident, at about 3:00 p.m. on January 12, 1972, the plaintiff's "Triumph" was the "insured motor vehicle" covered by the insurance policy issued by the defendant.

In our opinion, an affirmative answer is required. The insurance policy here involved states that the motor vehicle insured thereunder is "the motor vehicle . . . described in this policy for which a specific premium charge is made . . .". The only vehicle which fitted this description on January 12, 1972 (the date of the accident) was the plaintiff's Triumph. The revised schedule which was later issued by the defendant, and which described the Ford Torino and listed a specific premium charge therefor, was by its own terms effective on January 13, 1972. This revision would therefore not affect Liberty's liability under the policy for damage to the Triumph on the preceding day.

The defendant originally disclaimed liability on the theory that at the time of the accident, the plaintiff was the owner of both the Triumph and the Ford, and that at his request, the coverage had been transferred to the Ford. The Agreed Statement of Facts refutes this argument by showing that at the

time of the accident, the plaintiff owned only the Triumph, and that he did not acquire ownership of the Ford until some hours thereafter. The case of *Nasis v. American Motorists Ins. Co.,* 353 Mass. 319 (1967), relied on by the defendant, is not pertinent to the case at bar. In the *Nasis* case, the accident occurred when the insured was operating his newly purchased Plymouth automobile while still retaining ownership and possession of the Ford which was originally covered by the insurance policy in question.

We are unable to agree with the defendant's further contention that as a result of the plaintiff's dealings in the early afternoon of January 12 with the defendant's representatives and his attempt to transfer the registration of the Triumph to the Ford, the insurance coverage under the policy was thereby shifted from the Triumph to the Ford. Such a transfer of coverage could not have been effected, since it appears from the agreed facts that the plaintiff acquired no insurable interest in the Ford until some two hours after the accident involving the Triumph, and it is well settled that if "the person insured has no insurable interest in the property covered when the policy . . . would become operative as to that property, the policy never takes effect as valid insurance on the property." *Womble v. Dubuque Fire & Marine Ins., Co.,* 310 Mass. 142, 144 (1941); *O'Neil v. Queen Ins. Co.,* 230 Mass. 269, 270 (1918); *Morrisson v. Boston Ins. Co.,* 234 Mass. 453, 456 (1920).

 This is an appropriate case for application of the well-settled principle that any ambiguity in the words of an insurance policy (including schedules therein) is to be resolved against the insurer and in favor of the insured. *(Schroeder v. Federal Ins. Co.,*

343 Mass. 472, 475 (1962); *Joseph E. Bennett Co., Inc. v. Fireman's Fund Ins. Co.,* 344 Mass. 99, 103 (1962)), and that whichever interpretation would best effectuate the main manifested design of the parties is to be favored". *Rezendes v. Prudential Ins. Co.,* 285 Mass. 505, 511 (1934); *Joseph E. Bennett Co., Inc. v. Fireman's Fund Ins. Co., supra,* pp. 103-104. It can hardly be argued that the parties here intended to deprive the plaintiff of his insurance coverage on the Triumph prior to the time when coverage under the policy would attach to the Ford. It is clear that the parties intended the policy to continue in effect as to one vehicle at all material times, and the only vehicle to which it could possibly have applied at the time of the accident was the Triumph.

 The plaintiff asks us to order the entry of judgment in his favor for double damages, interest, costs, and attorney's fees, pursuant to G.L. c. 90, §34 (O), (3) (b). This section provides that "If the court determines that the insurer was unreasonable in refusing to pay the insured's claim for damages covered by such a policy, the claimant shall be entitled to recover double the amount of damages claimed plus his costs and reasonable attorney's fees fixed by the court." As noted at the outset of this opinion, the trial justice found for the defendant. While we disagree with his conclusion, we do not find that the defendant was, in the circumstances of this case, unreasonable in refusing to pay the plaintiff's claim, pending a judicial determination as to its liability thereon.

It is hereby ordered and adjudged that the finding for the defendant be vacated, and that a **finding be entered for the plaintiff for $1,200.00.**