RICHARD WARE *vs.* ROBERT S. MINOT, trustee.

Suffolk.    March 12, 1909. — June 22, 1909.

Present : KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Devise and Legacy.*

A widow, having one son, R., who was her only prospective heir and afterwards became her heir, died leaving a holographic will, of which the residuary clause was as follows : " All the rest, residue and remainder of my property of every description whatever, real, personal and mixed, . . . I bequeath to my said son, R.   If the said R. shall not survive me, or if he shall die leaving no will duly executed by him, or if he shall die leaving no lineal descendants, then in that case it is my wish, and I so direct, that it, the property above mentioned, shall at my son's death pass in equal shares to my nieces, daughters of my late sister, E. and to the lawful, living children of either of them who shall then be dead, if any, such last named to take the share which would have gone to their mother had she continued to live." *Held,* that, in the real estate left by the testatrix, her son took a life estate, with a remainder to such persons as he by will might appoint, or, in default of such appointment, to his lineal descendants, or, if there were no lineal descendants living at his death, then to the nieces of the testatrix.

BILL IN EQUITY, filed in the Probate Court for the county of Suffolk on December 19, 1907, alleging

1. That Ellen M. Ware of Washington in the District of Columbia, died on August 31, 1906, leaving a will which was proved in the county of Suffolk on November 22, 1906; that the plaintiff and Albion Parris of Washington were named as executors in this will, and were appointed and qualified as such.

2. That at the time of her death Ellen M. Ware was seised and possessed of one undivided half part of a certain parcel of real estate situated on Essex Street and East Street in Boston.

3. That on July 11, 1907, the plaintiff presented to the Probate Court for the county of Suffolk a petition praying for the appointment of Robert S. Minot, or some other suitable person, as trustee to sell and convey the undivided half part of said real estate situate on Essex Street and East Street in Boston; that on this petition it was ordered and decreed by the judge of probate for the county of Suffolk that Robert S. Minot be appointed trustee with authority to sell said undivided half part for

$133,500, and to invest the proceeds thereof simultaneously in shares or certificates to be issued by said Minot as trustee under the Willis-Ware real estate trust agreement, and to hold and apply such shares or certificates for the benefit of the persons who would have been entitled to said undivided half part of said real estate if such sale had not been made.

4. That in accordance with this decree Minot sold said real estate (the plaintiff joining in the conveyance thereof) and invested the proceeds, namely, $133,500, in shares of said Willis-Ware real estate trust, and at the time of the filing of the bill said shares stood in the name and were in the possession of said Minot as trustee under said decree.

5. That the plaintiff was informed and believed, and therefore averred, that the only persons who might or could be entitled to any interest in said undivided half part of said real estate if such sale had not been made (other than Robert S. Minot) were the plaintiff, Emily W. Pierce of Portland, Maine, Charlotte H. Mansfield of Portland, Maine, and certain minors named, the children of Charlotte H. Mansfield, and any issue not yet born of said Emily W. Pierce and Charlotte H. Mansfield.

The plaintiff prayed

1. That the court should determine what persons, if any, other than the plaintiff would have been entitled to said undivided half part of said real estate if such sale had not been made, and what the respective rights and interests of the parties were therein.

2. That said trustee, Robert S. Minot, be ordered to transfer and assign said shares in the Willis-Ware real estate trust to the plaintiff, and that the court should make such other order or decree with reference to said shares as might seem meet and proper.

The will of Ellen M. Ware, of which a copy was attached to the bill, was as follows:

" I, Ellen M. Ware of the City of Washington, D. C., do make and declare this my last will and testament.

" My real estate situated in the City of Portland, Maine, I leave in trust to the executors of this will to be disposed of as follows:

"All the interest and rents accruing from my share of the Portland estate to be applied to paying off the sums advanced by me for the improvement of the property owned by us in common. When such indebtedness is paid to my son Richard Ware interest and principal, then one half of the income of such estate I wish to be paid regularly to Emily W. Pierce.

"The other half of the income to be applied to the payment of various sums of money loaned by me to Warren W. Mansfield amounting in all to $8000.00; all these payments of indebtedness to go to my son Richard Ware. When all these debts are paid, then the whole of such estate in Portland, Maine, I wish to be handed over to said Emily W. Pierce and Charlotte H. Pierce (Mansfield) as their own freehold, half to each.

"To Miss Emily W. Dana of Falmouth, Maine, I bequeath six thousand dollars in memory of pleasures and obligations of the past.

"All my household furniture, all my silver plate, jewelry, clothing and personal articles I give to my son Richard Ware.

"All the rest, residue and remainder of my property of every description whatever, real, personal and mixed, of whatever the same may consist, wherever the same may be situated, and whenever the same may have been acquired, whether before or after the execution of this will, I bequeath to my said son, Richard

"If the said Richard shall not survive me, or if he shall die leaving no will duly executed by him, or if he shall die leaving no lineal descendants, then in that case it is my wish, and I so direct, that it, the property above mentioned, shall at my son's death pass in equal shares to my nieces, daughters of my late sister, Emily H. Pierce and to the lawful, living children of either of them who shall then be dead, if any, such last named to take the share which would have gone to their mother .had she continued to live.

"I appoint my son, Richard Ware, and Mr. Albion K. Parris, both of Washington D. C. to execute this will; and I request that neither shall be required to give bonds.

"Ellen M. Ware."

[Here followed an attesting clause and the signatures of three witnesses.]

The Probate Court appointed Charles B. Barnes, Jr., Esquire, guardian *ad litem*, to represent minor children and persons unborn. He filed a report as such guardian, and the case was heard in the Probate Court upon his report by *George*, J. He made a decree declaring, among other things, that by the will the plaintiff, " Richard Ware, took a qualified fee in the one undivided half part of the real estate mentioned in the petition, being part of the residue determinable in the event of his death leaving no will or lineal descendants, with an executory devise over to the nieces of the testatrix, daughters of her late sister, Emily H. Pierce, and to the lawful, living children of either of them who shall then be dead, by right of representation." The plaintiff, as the sole child and heir at law of Ellen M. Ware, appealed.

Upon the appeal the case was heard by *Sheldon*, J. He ruled as a matter of law that the will of Ellen M. Ware created an executory devise, and that the plaintiff did not take an absolute fee. He ordered that the appeal be dismissed and that the case be remitted to the Probate Court, without passing upon the question of the power of the court on this bill to act upon the removal of the trustee. At the request of the plaintiff, he reserved the case, upon the pleadings and the evidence, for determination by the full court, such decree to be entered as justice and equity might require. The evidence was reported by a commissioner appointed under Equity Rule 35. By a photograph of the will of Ellen M. Ware, which was put in evidence by agreement, it appeared that the will was in the handwriting of the testatrix.

*C. F. Choate, Jr.*, for the plaintiff.

*H. Parker*, for the defendant.

*C. B. Barnes, Jr.*, guardian *ad litem*, submitted a brief.

RUGG, J. Ellen M. Ware by her holographic will gave certain real estate in trust, one pecuniary bequest, and to her son Richard her household furniture and other personal effects, and then proceeded as follows :

" All the rest, residue and remainder of my property of every description whatever, real, personal and mixed, of whatever the same may consist, wherever the same may be situated, and whenever the same may have been acquired, whether before. or

after the execution of this will, I bequeath to my said son, Richard

" If the said Richard shall not survive me, or if he shall die leaving no will duly executed by him, or if he shall die leaving no lineal descendants, then in that case it is my wish, and I so direct, that it, the property above mentioned, shall at my son's death pass in equal shares to my nieces, daughters of my late sister, Emily H. Pierce and to the lawful, living children of either of them who shall then be dead, if any, such last named to take the share which would have gone to their mother had she continued to live."

This residuary clause disposed of both real and personal estate, but we are asked now to determine only the nature of the estate taken by Richard Ware in land in Boston.

The rule for the construction of wills followed by courts in recent times is to ascertain the intent of the testator from the whole instrument, attributing due weight to all its language, and then give effect to that intent unless prevented by some positive rule of law, rather than to try to make the interpretation of particular words or phrases in one instrument square with that before given to somewhat similar words used by some one else under other surroundings to accomplish a more or less different end. *McCurdy* v. *McCallum*, 186 Mass. 464. A few combinations of words have become so fixed in their meaning by long and unvarying use as to be rules of property. But ordinary canons for the interpretation of wills, having been established only as aids for determining testamentary intent, are to be followed only so far as they accomplish that purpose, and not when the result would be to defeat it. *Crapo* v. *Price*, 190 Mass. 317, 319. *Jewett* v. *Jewett*, 200 Mass. 310, 317. It is permissible also to look at all the material circumstances in the light of which the will was executed in order to comprehend the sense and purpose of the language employed.

The present testatrix was the mother of the petitioner, who was her only prospective heir. The latter, at the time of the execution of the will, was past forty years of age, and had never married. It was in her mind that the son might predecease her, that, surviving her, he might also die intestate, and that, although it was possible that he might leave lineal descendants, he had

reached middle age without having married, and might never do so. Being legally untrained, she attempted to express her thoughts on paper. She gave the residue to the son and devised it in the event of the son dying before her. Then by plain inference she gave him the power, if he survived her, to dispose of it by will, and by clear intendment also she provided that his lineal descendants should take it, if he failed to exercise the power. She expressed these last two alternative dispositions by the same form of subjunctive construction. But the meaning is the same as if she had expressly conferred the power, or made a devise to his offspring in the event of his intestacy.

If she had intended to give the son a fee, it was idle to confer upon him a power to appoint by will. The express gift of this power by implication excludes the right to convey or dispose in any other way. *Kent* v. *Morrison,* 153 Mass. 137. The devise over to lineal descendants is strong evidence that she did not intend the estate of the son to possess the incident of descent to his heirs, and that therefore it was not a fee. *Baker* v. *Thompson,* 162 Mass. 40. The language of the gift to the son contains no technical words of inheritance, so that the estate given him is a question of construction. *Dorr* v. *Johnson,* 170 Mass. 540. There are no words like " rest " or " remaining estate " sometimes indicative of a fee or an absolute power of disposal (*Kelley* v. *Meins,* 135 Mass. 231, 233), for the gift over is of " it, the property above mentioned," which means the entire residue and is language apt to create a technical remainder. Although the clause is not grammatically or logically perfect, its meaning is not hard to discover. The testatrix intended the property, in the event that the son did not survive her, to go to the nieces, but if he survived her she intended it to go to him, not with the right to convey it away during his life, but with power to dispose of it by will, a power which could operate on 'the property only after his decease ; and she further intended that, if he did not make a will, it should go not to his heirs generally but to his lineal descendants surviving him, and finally that, in default of a will and such descendants, it should go to her nieces. The language expressive of this intent can in no part be brushed aside nor overridden without doing violence to the designs of the testatrix as written by her. There is in the will no word or phrase, which

of itself, by force of some positive rule of law, regardless of other language, creates a particular kind of estate in any of the donees. Therefore the numerous cases, of which *Bassett* v. *Nickerson*, 184 Mass. 169, 173, and *Galligan* v. *McDonald*, 200 Mass. 299, are illustrations, are not in point. Although the devise to the son is not technically phrased to create a life estate, it appears from what follows in the will that this is all that was intended. Hence R. L. c. 135, § 22, is not applicable. The legal consequence of the language employed, giving all of it due effect, is a life estate to the son, with remainder to such persons as he by will may appoint, or, in default of such appointment, to his lineal descendants (R. L. c. 134, § 5; c. 154, §§ 7, 8), or if there are no descendants living at his death, then to her nieces.

By emphasizing some parts of the will to the exclusion of others, or by putting one part of the testator's intent above another, a different conclusion might be reached. But we have no right to do that. All the words of the will are satisfied and given some weight only by holding that the son took an estate for his life with power of appointment and remainders over in default thereof, as have been stated. The decree of the Probate Court is reversed, and a decree is to be entered in accordance with this decision.

*So ordered.*