FREDERIC C. DUMAINE, JR., trustee, *vs.* FREDERIC C. DUMAINE, JR., & others.

Suffolk.    May 4, 1938. — September 14, 1938.

Present: LUMMUS, QUA, DOLAN, & COX, JJ.

*Trust,* Capital and income, Discretionary powers of trustee, Construction of instrument creating trust.

Upon construction of a trust instrument, directing payment of income to the trustee as an individual and of principal after his death to another trust which had been established twelve years before and under which he and members of his family and a charitable institution were beneficiaries, and specifically giving the trustee as to several matters "absolute and uncontrolled discretion" and limiting his liability to errors or omissions due to "his own dishonesty or gross negligence," a provision that the trustee "shall have full power and discretion to determine whether any money or other property received by him is principal or income without being answerable to any person for the manner in which he shall exercise that discretion" made it proper for the trustee, honestly exercising his discretion, to pay to himself as life tenant a profit derived from sale of a security for a price above its cost.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on February 4, 1938, and afterwards amended.

The case was reserved by *Donahue,* J.

*R. C. Curtis,* stated the case.

*T. Hunt,* for the defendants Chase and others, trustees.

*C. C. Cabot,* for the defendant Frederic C. Dumaine, Jr., and another.

Cox, J.    This is a bill in equity for instructions filed in the Supreme Judicial Court by the plaintiff, in his capacity as sole trustee under an indenture of trust dated April 11,

1932. The defendants are the plaintiff as an individual, Frederic C. Dumaine, Sr., and the trustees of a voluntary association, designated in the articles of association as "Dumaines," created and existing under the laws of New Hampshire. There is no dispute between the parties as to the material facts. The answers admit the allegations of the bill. The case was heard by a single justice who, at the request of the parties, reserved it for the full court upon the bill as amended and the answers. The sole question for determination is the power of the trustee under the following clause of the trust indenture: "The trustee under this instrument shall have full power and discretion to determine whether any money or other property received by him is principal or income without being answerable to any person for the manner in which he shall exercise that discretion."

Frederic C. Dumaine, Jr., the plaintiff trustee, and Frederic C. Dumaine, Sr., a defendant, are the life tenants under the trust indenture, and the trustees of "Dumaines," defendants, are the remaindermen. By the terms of the trust instrument certain property was conveyed to the plaintiff in trust "To hold, manage, invest and reinvest the same with all the powers hereinafter set forth, and, after paying the expenses of administering the trust in this instrument set forth," to pay the net income as therein directed. The trustee is not required to give any bond, and "No trustee under this instrument shall ever be held responsible for any act or omission of any other person nor for any loss or depreciation of any of the trust property unless such loss or depreciation shall have been directly caused by his own dishonesty or gross negligence . . . . He shall not be responsible for any loss which may occur if he shall have in his absolute and uncontrolled discretion mortgaged, pledged or otherwise encumbered any of the property of this trust fund for the benefit of 'Dumaines.' " Absolute and uncontrolled discretion is given the trustee as to the purchase and retention of securities. No trustee is ever to be liable to any person for any loss occasioned by depreciation of any security or property, and no person

interested in the trust is entitled to proceed against the trustee on account of any such loss.

The bill was amended by adding an additional paragraph thereto: "7. The petitioner has sold certain shares of stock during the year 1938 at a profit over and above cost and is in doubt whether, as alleged by the Commissioner of Internal Revenue, he now under the trust instrument may in his discretion distribute the said profit to himself, as life tenant, as income." The defendants admit the allegations contained in this amendment. The prayers of the bill are (1) whether, under the provision of the trust indenture concerning which instruction is asked, the plaintiff has "the right to determine, contrary to the usual rules of law in this Commonwealth, what money or other property received by him, as trustee under said indenture, is principal or income, or whether said provision is to be construed as a limitation of the liability of the trustee without changing, for the purposes of the trust under said indenture, the usual rules of law of this Commonwealth as to what money or property, received by the trustee, is principal or income," and (2) "Whether or not the petitioner may in his discretion distribute to the life tenant gains from sales of securities." The defendant trustees in their brief state that "The precise question to be determined may be stated as follows: — Has the Petitioner, in his capacity as Trustee, the right and the power to distribute now to himself (in his personal capacity), 'as life tenant,' a profit derived during the year 1938 as the result of selling certain shares of stock, a part of the trust property, at a price 'over and above cost'?"

The purposes of the trust are clearly stated to be (1) "to pay so much of the net income as the trustee in his absolute and uncontrolled discretion shall determine, to said Frederic C. Dumaine, Jr. during his life, [2] and upon his death to pay such part of said net income as the trustee in his like absolute and uncontrolled discretion shall determine, to Frederic C. Dumaine . . . [3] and the balance of said income, if there be any at the end of any year, to carry to capital, [4] and upon the death of the survivor to

pay over, transfer and convey the trust estate as then existing to the persons who at that time shall be the trustees of 'Dumaines,' . . . to be held by said trustees upon the trusts set forth in said ['Dumaines'] instrument." These purposes, however, are subject to the power of the trustee "to apply any money or other property received by him, whether principal or income, for the protection of any of the rest of the trust fund and also for the protection of any or all of the trust fund of 'Dumaines' in such manner as he shall in his absolute and uncontrolled discretion deem best," and also subject to the power "to pledge, to borrow and to mortgage any of the property of which this trust fund may at any time consist for the benefit of 'Dumaines' . . . and to turn over to said 'Dumaines' the money raised thereby, all as he shall in his absolute and uncontrolled discretion deem best, not only for this trust but for the trust fund known as 'Dumaines.'" And there is also the provision, which is specifically under inquiry, that the trustee "shall have full power and discretion to determine whether any money or other property received by him is principal or income without being answerable to any person for the manner in which he shall exercise that discretion."

It has often been held that one of the principal requisites for the maintenance of a bill for instructions is the fiduciary possession of a fund of which some disposition is required to be made presently. *Bullard* v. *Chandler*, 149 Mass. 532, 538, and cases cited. *Saltonstall* v. *Treasurer & Receiver General*, 256 Mass. 519, 528. *Hull* v. *Adams*, 286 Mass. 329, 331. *Cronan* v. *Cronan*, 286 Mass. 497. Our inquiry will be limited to the question raised by the amendment to the bill, that is, whether the trustee may, in his discretion, distribute to himself, as life tenant, as income, the profit derived by the sale of certain shares of stock in 1938, over and above their cost. The general rule is that, in case of a trust, gains resulting from the purchase and sale of securities are accretions belonging to the principal of the trust fund, rather than income. *Williams* v. *Milton*, 215 Mass. 1, 11. *Tax Commissioner* v. *Putnam*, 227 Mass. 522, 529. *Holcombe* v. *Ginn*, 296 Mass. 415. Such gains ordinarily

do not belong to a beneficiary who is entitled to the "net income" under the trust. *Chase* v. *Union National Bank of Lowell*, 275 Mass. 503, 507. It has been determined that gains from the sale of capital assets may be taxed as "income" within the meaning of a constitutional provision giving the Legislature authority to levy "a tax on income." *Tax Commissioner* v. *Putnam*, 227 Mass. 522. See *Greenough* v. *Commissioner of Internal Revenue*, 74 Fed. (2d) 25. Reference is made to the discussion of the word "income," in *Tax Commissioner* v. *Putnam*, 227 Mass. 522. It is to be assumed that the settlor was familiar with these provisions of law at the time he executed the trust instrument, *Tax Commissioner* v. *Putnam*, 227 Mass. 522, 528, as well as the rule laid down in *Minot* v. *Paine*, 99 Mass. 101, as to stock dividends payable in cash or in stock being classified as income or principal. It is for us to determine, in so far as we are able, and sufficiently to answer the question raised, what the intention of the settlor was when he made use of the words contained in the clause under inquiry, for it is his intention which is the "controlling consideration" in determining the rights as between the life tenants and remaindermen. *Gray* v. *Hemenway*, 268 Mass. 515, 518. See *Atkins* v. *Albree*, 12 Allen, 359, 361; *Claflin* v. *Dewey*, 177 Mass. 166, 169; *McElwain* v. *Attorney General*, 241 Mass. 112, 117–118. And in making this determination, we must be guided by the well known principle of law that the whole instrument is to be considered, aided by the surrounding circumstances, due weight being given to all its language, with some meaning being given, if possible, to all parts, expressions and words used, discarding and disregarding no parts as meaningless, if any meaning can be given them consistently with the rest of the instrument. *Minot* v. *Thompson*, 106 Mass. 583, 585. *Ware* v. *Minot*, 202 Mass. 512, 516. Effect is to be given to the intent so ascertained unless some positive rule of law prevents. *Hull* v. *Adams*, 286 Mass. 329, 333.

Trustees frequently are given power by the trust instrument to pay over a part of the principal to beneficiaries as to whom provision already has been made for payments of

the income of the entire trust fund. This power may be conditional or unconditional. *Boyden* v. *Stevens*, 285 Mass. 176, 178–179, and cases collected. A mere discretion to pay over such portion of principal as the trustee may "deem advisable," does not amount to an absolute power without limitation. It involves serious and responsible consideration. *Boyden* v. *Stevens*, 285 Mass. 176, 179, and cases cited. In the case of *Mayberry* v. *Carey*, 268 Mass. 255, 257, a codicil of the will under inquiry provided: "For the purposes of the administration, settlement or distribution of my estate, I give my executor . . . and my administrator . . . and the trustee or trustees of each and every trust created by my will, the right to decide what is capital, what is income and what is net income . . . and their decision shall be final." It was held that the executor's determination as to net income was a proper exercise of his "discretionary power" and binding upon all parties, and that until the property of the trust was turned over to the trustee, by the administrators with the will annexed, the administrators were to exercise as to that property the discretionary power given them by the codicil, and also that the trustee was bound by the decision of the administrators as to what was net income. And in the case of *Gray* v. *Hemenway*, 268 Mass. 515, 518, already referred to, the court said: "In determining the rights as between life tenants and remaindermen, the intention of the testator is the controlling consideration. *Reed* v. *Head*, 6 Allen, 174, 178. If a testator, residing in this Commonwealth, makes a gift of income without defining what he intends the word to mean or prescribing the method by which the income is to be determined (see *Mayberry* v. *Carey*, *ante*, 255, 258, 259), he would naturally expect the rights of beneficiaries in distributions on corporate stock held in trust to be governed by the rules adopted by this court as generally applicable to such cases."

In the case of *Minot* v. *Paine*, 99 Mass. 101, 112, it was said, in discussing the right of a beneficiary, who was entitled to income for life, to additional shares of stock distributed to the trustee as dividends on stock already held,

that "As to him [the owner of stock], a stock dividend is an accretion to his capital; and there is nothing to show that the testator intended that it should be otherwise as between the successive takers of his bounty." See *Greenough* v. *Commissioner of Internal Revenue*, 74 Fed. (2d) 25; *Estate of Wells*, 156 Wis. 294, 303, 307. In the case of *Chase National Bank of New York* v. *Chicago Title & Trust Co.* 246 App. Div. (N. Y.) 201, 206, affirmed 271 N. Y. 602 (see 247 App. Div. [N. Y.] 706), the trust instrument provided that the trustee, with the consent of the "committee" should "have power to determine . . . whether . . . stock dividends, rights or other things, are to be treated as capital or income," and it was held that this gave the trustee, with the consent of the "committee," power to allocate to principal stock dividends and to decline to hold them as income. The "committee" consisted of five persons closely associated with the grantor by family and business connections, and appointed by him in the trust instrument, with certain broad powers of control over the trust fund and the action of the trustees.

The defendant trustees do not appear to argue that a settlor has no power to confer a discretion upon his trustees to determine what is income and what is principal, but do contend that, under the trust instrument in question, the trustee has no power to determine, contrary to established rules of law in this Commonwealth, what money or other property received by him as trustee is principal or income. This court has uniformly held that trustees in whom a discretion is vested are under an obligation to exercise a "sound judgment and a reasonable and prudent discretion," *Davis, appellant*, 183 Mass. 499, 502; that kind of "power and discretion which inheres in a fiduciary relation and not that illimitable potentiality which an unrestrained individual possesses respecting his own property," *Corkery* v. *Dorsey*, 223 Mass. 97, 101; a "soundness of judgment which follows from a due appreciation of trust responsibility," *Boyden* v. *Stevens*, 285 Mass. 176, 179, unless the settlor has expressed an intention that the power of discretion conferred is such that "the court will not interfere

except upon clear proof that the trustees are abusing their authority and acting in perversion of the trust." *Leverett* v. *Barnwell*, 214 Mass. 105, 108. See *National Exchange Bank* v. *Sutton*, 147 Mass. 131, 135.

In the case at bar it is pointed out that, in six instances in the trust instrument, the trustee is given an "absolute and uncontrolled discretion" and that these comprehensive and conclusive words do not appear in the clause under inquiry where the words used are "full power and discretion." Reverting to the terms of the trust instrument, hereinbefore quoted, it is to be noted that if at the end of any year there is a balance of income, it is to be carried to capital, and that, during the lives of the life tenants (compare *North Adams National Bank* v. *Curtiss*, 284 Mass. 330, 336), the trust property may be mortgaged or encumbered for the benefit of "Dumaines," all of which manifests on the part of the settlor an interest in the remaindermen, possibly to the disadvantage of the life tenants. Compare *Cammann* v. *Abbe*, 258 Mass. 427, 429. Moreover, the life tenant's right to any part of the income depends upon how much the trustee shall determine in "his absolute and uncontrolled discretion" to pay. Then, too, the present trustee is the present life tenant and was the life tenant when the trust was created. Great powers, which powers will enure to his successor, are conferred upon him in the management of the trust. His liability for errors or omissions is posited only upon "his own dishonesty or gross negligence," and he is not required to furnish any bond.

On the other hand "full power and discretion" to determine whether any money or other property received by the trustee is principal or income, in the light of attendant circumstances and the language of the trust instrument as a whole, would have little significance if construed to mean a discretion so to determine only in cases where there is no settled law to guide. By the terms of the trust instrument he is to have that power and discretion "without being answerable to any person for the manner in which he shall exercise that discretion."

The court may properly have in mind that, when a settlor reposes a discretion in a trustee, he does so because he desires the honest judgment of the trustee, perhaps even to the exclusion of that of the court. In reposing a discretion he must be held to have known that human judgment is not infallible. It is not for the court to read into a trust instrument provisions which do not expressly appear or which do not arise by implication from the plain meaning of the words used, *Trustees of the Smith Charities* v. *Northampton,* 10 Allen, 498, 501; *Penniman* v. *Sanderson,* 13 Allen, 193, 204; *Bremer* v. *Hadley,* 196 Mass. 217, and the court will not substitute its discretion for that of the trustee except when necessary to prevent an abuse of discretion. *Proctor* v. *Heyer,* 122 Mass. 525. *Bradlee* v. *Andrews,* 137 Mass. 50, 55. *National Exchange Bank* v. *Sutton,* 147 Mass. 131, 135. *Wright* v. *Blinn,* 225 Mass. 146, 148. It has been said that doubtless a trust might be created which by its terms would make his judgment, however unwise it might be, the final test. *Corkery* v. *Dorsey,* 223 Mass. 97, 101. See *Gisborne* v. *Gisborne,* 2 App. Cas. 300.

The power, if uncontrollable, to determine whether any money or other property received by the trustee is principal or income, coupled with the power to pay over to the present life tenant so much of the net income as in his absolute and uncontrolled discretion he shall determine, would give the trustee power to destroy the trust. The settlor had no such intention. In deciding the question which is before us, we think that the scope of our inquiry properly embraces the needs of the life tenants, the continuance of the trust until its manifest purposes are accomplished, and the protection and well-being of the "Dumaines," of which latter trust the plaintiff is not only a trustee but also a beneficiary. We do not think the clause in issue confers an absolute and uncontrolled discretion. Nor do we think that it limits the trustee to the determination of the matter involved in cases where there is a question of doubt or no rule of law to guide him. We have nothing before us to show the amount of the trust fund. The trust known as "Dumaines" was created on July 31, 1920,

twelve years prior to the trust involved. It made immediate provisions for the children of Frederic C. Dumaine, with ultimate provisions for a substantial educational charity. The power is reserved, in the trust before us, in Frederic C. Dumaine, to make additions to the trust property, and to appoint other trustees instead of or in addition to the one named in the instrument. The trust known as "Dumaines" stands out as an important consideration in the mind of the settlor of the trust before us. Clearly he contemplated no destruction of his trust by any discretionary act of the trustee. But he did intend to give the trustee a power to determine what was principal and income, although he refrained from conferring that power as an absolute and uncontrolled discretion, and we regard this as significant, in the light shed upon the inquiry by a consideration of all factors. The discretion conferred is not an empty one. It confers an important responsibility to make a determination which, if honestly exercised, calls for no revision by the court. Am. Law Inst. Restatement: Trusts, §§ 187, 233.

In the case of *Tax Commissioner* v. *Putnam*, 227 Mass. 522, where it was held that gains received from sales of stock come within the definitions of "income," as that word is used in the Forty-fourth Amendment to the Constitution of the Commonwealth, which confers full power on the General Court to levy a tax on income as therein provided, it was said that, in the case of trust estates, profits and gains arising from the increase in value of investments and realized by sale are treated as a part of the principal and not as income. See *Harrison* v. *Commissioner of Corporations & Taxation*, 272 Mass. 422, 425. The possibility of conflicting interests between life tenants and remaindermen as to what is principal and income is not of primary importance in determining whether a certain gain to a trust estate is taxable as income. It is important, however, to observe that in one connection a gain is classed as income and in another as principal and that this court sees no inconsistency in such classifications. A settlor of a trust must know that, unless he says something to the contrary in his

trust instrument, the court's classification will be followed in the administration of his trust. We see no good reason why he cannot be permitted to do that which the court itself can do by way of classification and also to delegate the power of classification to his trustee. If the delegation of power is comprehensive and sufficient, the court must respect it and make effectual the expressed intent of the settlor.

Upon consideration of the entire matter, we are of the opinion that the trustee under the clause in question has full power and discretion, after serious and responsible consideration, short of arbitrary. or dishonest conduct or bad faith or fraud, when he has to determine whether any money or other property received by him is principal or income; and that upon this record there is nothing disclosed to prevent him from distributing to himself, in his personal capacity, the profit derived during the year 1938 as the result of selling certain shares of stock, a part of the trust property, at a price "over and above cost."

Decree is to be entered instructing the trustee accordingly, the details of which are to be fixed by a single justice. Costs as between solicitor and client are to be in the discretion of the single justice, to be paid out of the trust funds.

*Ordered accordingly.*