WILL OF CLARENBACH: BRITE and another, Trustees, Appellants, v. HEGGESTAD, Guardian *ad litem*, Respondent.*

*February 7—March 3, 1964.*

* Motion for rehearing denied, with costs, on April 28, 1964.

72

For the appellants there were briefs by *Michael, Best & Friedrich,* and oral argument by *Gaar W. Steiner* and *George A. Schutt,* all of Milwaukee.

For the respondent there was a brief and oral argument by *E. J. Heggestad* of Milwaukee, guardian *ad litem.*

DIETERICH, J.   The crux of the instant appeal is the interpretation to be placed upon clause 7 (G) of the trust provisions of the will, which reads:

"(G) I hereby grant to my executors the power to determine how all receipts, whether realized or accrued (inclusive of stocks, rights, securities received upon reconversion or upon reorganization, or other securities) and all disbursements, whether paid or accrued, shall be charged or apportioned as between income and principal in making current or final distributions, and the decision of the executors shall be final and not subject to question by any court or by any beneficiary hereof."

While the above-quoted clause speaks of executors and not trustees, it is conceded that the trustees succeeded to the same discretionary power conferred upon the executors.

The appellant trustees contend in effect that irrespective of whether or not they consider profits realized from the sale of trust corpus securities to be income or corpus, they have the uncontrolled discretion under this clause to distribute such part of these profits to themselves so long as they do not abuse their discretion.  They point to the fact that they have not distributed all of such profits to themselves but only approximately half thereof and that this moderation on their part absolves them from any charge of abuse of discretion. The guardian *ad litem,* on the other hand, contends that the clause must be construed as conferring upon the trustees the discretion to determine in good faith whether any particular

receipt of the trust is income or principal from an accounting standpoint; and, only after having made the decision in good faith that a particular receipt is income, may the trustees lawfully distribute the same to themselves as the life beneficiaries of the trust.

The Uniform Principal and Income Act was adopted in Wisconsin in 1957, and sec. 231.40 (3) (b) of that act provides that, "Any profit . . . resulting upon any change in form of principal shall enure . . . upon principal." The instant profits from sale of trust securities fall into that category. However, sec. 231.40 (2) authorizes the person creating a trust to vary this provision of the act by granting discretion in the trustees to apportion receipts contrary to the other provisions of the act.[1] In these two respects, the act is but a codification of the common law of this state which existed prior to its enactment.

However, in another respect the Uniform Principal and Income Act (sec. 231.40, Stats.) operated so as to materially change the common law of Wisconsin. This is the provision of sec. 231.40 (5) (a) which provides that stock dividends "shall be deemed principal." As pointed out in *Will of Allis* (1959), 6 Wis. (2d) 1, 94 N. W. (2d) 226, prior to enactment of the act in 1957, Wisconsin followed the Pennsylvania rule with respect to apportioning stock dividends between trust principal and income, and this often presented an acute accounting problem. The instant will was drafted prior to enactment of the act, and the fact that Wisconsin followed the Pennsylvania rule with respect to stock dividends may well have been one of the reasons which prompted testatrix to include clause 7 (G) in her will. This probability is one

[1] Sec. 231.40 (2), Stats., provides in part: ". . . and the person establishing the principal may himself direct the manner of ascertainment of income and principal and the apportionment of receipts and expenses or grant discretion to the trustee or other person to do so, and such provision and direction, where not otherwise contrary to law, shall control notwithstanding this section."

of the factors that motivates this court toward adopting the interpretation of that clause advanced by the guardian *ad litem.*

Another fact is that nowhere else in the will is there any provision which grants discretion to the trustees to invade the corpus, even to a limited extent, for the benefit of the life beneficiaries. However, the interpretation advanced by the trustees would convert clause 7 (G) into exactly that type of device. We cannot bring ourselves to the opinion that this was what the testatrix intended by that clause.

It is our considered judgment that the purpose of clause 7 (G) was to protect the trustees from any liability after they exercised their good-faith judgment that a particular receipt was to be treated as either income or principal for accounting purposes, or for the purpose of apportionment between the life beneficiaries and remaindermen. We, therefore, so construe it and reject the broader interpretation advanced by the trustees.

It might be argued that the guardian *ad litem* has not adduced any proof that, interpreting clause 7 (G) as we do, there has been any abuse of discretion by the trustees, viz., a failure to make a good-faith decision that $10,000 of the $19,858.63 of the profits realized from the sale of trust securities constituted trust income and not principal. We consider that the account filed by the trustees, together with their arguments on the issue of abuse of discretion advanced on this appeal, clearly establish that the trustees did not make a good-faith decision that the $10,000 of profits constituted income and not principal. In the recapitulation at the end of the account all the profits from the sale of securities are lumped together under the one item "Capital Gains—1962, $19,858.63," although earlier in the account there is a detailed table showing the cost, the selling price, and the profit realized on each sale of stock. The account further shows that $5,000 of these profits was disbursed to each of the two

life beneficiaries on December 31, 1962, the disbursement being labeled "Cap. Gains Dist." No profit realized on the sale of these securities was in round figures, but all were amounts ending in odd cents. No attempt was made by the trustees to allocate the $10,000 to any particular stock or stocks sold. There is no logical reason why an even figure of $10,000 should have been segregated out of the $19,858.63 total profits as being income and the remaining $9,858.63 be treated as principal. The only justification advanced by the trustees for this arbitrary distribution was that they were given discretion to do this by clause 7 (G).

The trustees place great reliance upon *Dumaine v. Dumaine* (1938), 301 Mass. 214, 16 N. E. (2d) 625. There, a trust clause bearing some similarity to clause 7 (G) of the trust in the instant action was broadly construed as permitting a partial invasion of principal. This result was not reached by the application of any different principle of law than we have herein acknowledged. If the person creating the trust intended such broad interpretation of the particular trust clause, then there is no breach of trust in the trustees' acting pursuant to such clause so broadly interpreted. However, there are three facts that are different in the *Dumaine Case* which may have influenced the Massachusetts court in interpreting the clause before it as it did. First, there was no change made in the Massachusetts law after the inception of the trust with respect to how stock dividends were to be apportioned between income and principal. At all times Massachusetts followed the simple rule that stock dividends were principal and not income. Also, profits from sale of assets composing the trust principal were to be treated as principal. Therefore, it is arguable that the trustor by the clause must have intended it as a power to invade receipts from such sources else the clause would serve no purpose. Second, the *Dumaine Case* clause did not have the parenthetical words "(inclusive of stocks, rights, securities re-

ceived upon reconversion or upon reorganization, or other securities)" found in clause 7 (G) of the Clarenbach trust which indicates the particular type of situation the testatrix in the instant action had in mind in granting discretion to her trustees. Third, in the *Dumaine* trust, the trustees had discretion to pay out trust income to the life beneficiaries for their needs, or to accumulate it. The Massachusetts court in its opinion emphasized this particular wide discretion in arriving at the broad interpretation it did with respect to the clause bearing similarity to clause 7 (G) of the instant trust. This is not the situation involved in the instant appeal, and consequently the *Dumaine Case* is not controlling. Thus we affirm the judgment of the trial court.

*By the Court.*—Judgment affirmed.

GORDON, J. (*dissenting*). I respectfully dissent. In my opinion, clause 7 (G) of the will gave to the trustees the power to determine whether capital gains on the sale of the trust property should be attributed in whole or in part to principal or to income. This is precisely what the testatrix had in mind when she granted her trustees power to determine "how all receipts . . . shall be . . . apportioned as between income and principal." I know of no reason why this discretionary power should not be fully respected by the court. The fact that the testatrix went on to say that the decision shall not be "subject to question by any court or by any beneficiary hereof" merely serves to stress the breadth of the trustees' discretion.

The increment which results from the sale of trust securities at a price beyond their cost is not so intrinsically a part of corpus as to make the trustees' decision erroneous, at least in the absence of affirmative proof thereof. Tax authorities, accountants, and financial experts can find ample substance for debate in attempting to analyze the true nature of profits. For example, see Hills, The Law of Accounting and Financial Statements, p. 173, sec. 5.3 :

"The terms 'income,' 'earnings,' 'profits' and their derivatives have not been so adequately classified or defined by the courts or the accountants that one may be distinguished from another with any certainty."

Leading legal scholars have recognized that it is within the proper sphere of a trust instrument to permit profits from the sale of trust securities to be ascribed to income. Bogert put the matter clearly when he said:

"Obviously the settlor may direct the disposition of profits, or give to his trustee power to allocate them in his discretion."

Bogert, Trusts and Trustees (2d ed.), p. 375, sec. 823. See also 3 Scott, Trusts (2d ed.), p. 1775, sec. 233.5. The aforesaid rule is entirely consistent with the Uniform Principal and Income Act as adopted in Wisconsin. Sec. 231.40 (2), Stats., expressly provides that a settlor may grant discretion to a trustee to apportion receipts and expenses and that such discretion "shall control."

In my opinion, Mrs. Clarenbach intended to give to her trustees the power to determine what was principal and what was income. While this is not an absolute discretion, there is applicable thereto what the Massachusetts court said in *Dumaine v. Dumaine* (1938), 301 Mass. 214, 223, 16 N. E. (2d) 625, 630:

"The discretion conferred is not an empty one. It confers an important responsibility to make a determination which, if honestly exercised, calls for no revision by the court."

There has been no showing of fraud, bad faith, or dishonest conduct on the part of the trustees, and, therefore, I believe that the exercise of the broad powers which were awarded to them by the testatrix should not be disturbed.

I am authorized to state that Mr. Justice FAIRCHILD and Mr. Justice WILKIE join in this dissent.