ESTATE OF JANE DEP. WEBSTER, DECEASED, HENRY U. HARRIS, CHARLES F. HOVEY AND JAMES H. ORR, CO-EXECUTORS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 181-74, 8799-74.     Filed February 12, 1976.

*Carl J. Marold* and *Robert McDonough,* for the petitioners.
*Barry J. Laterman,* for the respondent.

OPINION

## I. *Transferor of the Original Corpus of the 1923 Trust*

In the main issue of this case, the second issue, we must decide that either additional estate tax is owing within the meaning of section 2038(a)(2) or that a gift was completed within the meaning of section 2511. In this first issue, we deal with a threshold issue, whether decedent was the transferor of the original corpus of the 1923 trust. If she was not, then we need not reach the second issue since sections 2038(a)(2)[2] and 2511[3]

---

[2] SEC. 2038. REVOCABLE TRANSFERS.

(a) IN GENERAL.—The value of the gross estate shall include the value of all property— * * *

(2) TRANSFERS ON OR BEFORE JUNE 22, 1936.—To the extent of any interest therein of which *the decedent has at any time made a transfer* * * *, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death. * * * [Emphasis added.]

[3] SEC. 2511. TRANSFERS IN GENERAL.

(a) SCOPE.—Subject to the limitations contained in this chapter, the tax imposed by section 2501 shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible * * *

would both be inapplicable and there would be neither additional estate tax nor any gift tax owing.

Petitioner argues that decedent was not transferor of the original corpus of the 1923 trust but merely a conduit for her husband, Edwin S. Webster. Petitioner admits the difficulty of establishing the true nature of the transaction more than 50 years later, but contends, nevertheless, that the written record[4] discloses that Edwin S. Webster intended to establish an insurance trust. It begins by noting that Edwin S. Webster transferred to decedent 4,000 shares of Stone & Webster, Inc., stock on January 19, 1922, the same day he transferred 1,000 shares to each of four trusts created for each of his children. It contends that in 1923 decedent's stock generated dividends of $28,000. It further contends that Mrs. Webster purchased eight insurance policies on the life of her husband and that the dividends from the Stone & Webster stock for 1923 approximately covered the 1923 insurance premiums. Petitioner notes that Mrs. Webster transferred the 4,000 shares of Stone & Webster to the 1923 trust around December 15, 1923, and contends that sometime shortly thereafter she also transferred the insurance policies to the same trust. Petitioner emphasizes two key passages from the trust indenture:

(2) * * * the Trustees shall have power at any time to apply for and take out insurance on the life of said Edwin S. Webster, husband of said Jane deP. Webster and father of the beneficiaries hereinafter named, *or to acquire from said Jane deP. Webster policies of insurance heretofore applied for and taken out by her on the life of her said husband;* and the Trustees shall have power to apply all or any part of the net income of the trust to the payment of premiums on policies of insurance so acquired or taken out by them, to borrow money on any such policies * * *
* * *

(4) In the event of the death of said Edwin S. Webster during the existence of this trust, the *Trustees may in their discretion purchase from the executors or administrators of his estate any securities owned by said estate at such prices as they may in their absolute discretion deem reasonable,* using for that purpose any available funds of the trust, and may exercise this power without regard to the fact that any or all of such securities may not be of a character which would under ordinary circumstances be deemed appropriate for the investment of trust funds, or that the amount of any particular class of securities so purchased from said estate might under ordinary circumstances be deemed excessive in comparison to the aggregate amount of the trust estate, it being understood that

---

[4] Respondent objects to some of petitioner's evidence as hearsay. We need not reach this evidentiary question since it is moot. Whether all of petitioner's evidence were to be admitted or not, the answer to this issue remains the same.

said Jane deP. Webster in creating this trust desires that in the event of the death of said Edwin S. Webster his executors or administrators may be enabled without undue sacrifice of any of the assets of his estate to realize thereupon cash which they may require for the settlement of the estate.

[Emphasis added.]

Petitioner asserts that the transactions outlined above indicate that Mrs. Webster had no beneficial interest in the 4,000 shares of Stone & Webster stock or the insurance policies (since the premiums were paid with dividends) but was merely the instrument her husband used to carry out his own estate plan. It argues that his intention was to create a trust for his children which could, at the same time, supply liquid funds for the settlement of his estate, such funds to be obtained from the proceeds of the insurance policies. It concludes that Edwin S. Webster, not decedent, was therefore the true transferor of the original trust corpus.

This issue involves a question of fact. *Estate of Arnold Resch,* 20 T.C. 171, 183 (1953). Petitioner has the burden of proof. *Welch v. Helvering,* 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. When respondent determines that the form of a taxpayer's transactions reflects the true substance of those transactions, the taxpayer must present strong proof to overcome the presumption that respondent's determination is correct. *J. Leonard Schmitz,* 51 T.C. 306 (1968), affd. sub. nom. *Throndson v. Commissioner,* 457 F.2d 1022 (9th Cir. 1972).

We hold that petitioner has failed to carry its burden of proof. The form of the transaction indicates that Edwin S. Webster transferred 4,000 shares of Stone & Webster stock outright to his wife and that approximately 23 months thereafter she, not her husband, transferred those shares to the 1923 trust. Yet petitioner contends, in essence, that decedent was merely an instrument of her husband's wishes. Petitioner has, however, presented us with no direct proof of this. We recognize the problems petitioner has at this late date gathering such information, but the burden of strong proof nevertheless remains with petitioner. What petitioner has presented is evidence that an insurance trust was intended. Even if we accept, arguendo, the contention that an insurance trust was intended, we see no reason why decedent was merely a conduit and why she could not herself have created an insurance trust to benefit her husband's estate.

Indeed, as part of its theory, petitioner emphasizes what it considers a key passage of article 4 of the trust indenture, which states that the trustees may purchase securities from the executors of Edwin S. Webster's estate at a price which they deem reasonable. However, the same article later states that it is understood that—

said Jane deP. Webster *in creating this trust* desires that in the event of the death of said Edwin S. Webster his executors or administrators may be enabled without undue sacrifice of any of the assets of his estate to realize thereupon cash which they may require for the settlement of the estate. [Emphasis added.]

We find here a clear indication that, if an insurance trust was, in fact, intended, decedent created it herself and was not merely a conduit for her husband.

In addition, two other factors support a holding that petitioner failed to carry its burden of proving that Edwin S. Webster was transferor of the original corpus rather than his wife. Edwin S. Webster gave his wife the 4,000 shares of Stone & Webster on January 19, 1922. It was not until approximately 23 months later, on or around December 15, 1923, that she, in turn, transferred them to the 1923 trust. Petitioner never explains the 23-month lag, although time is an important factor in determining true ownership. *Estate of Arnold Resch, supra* at 184. Had decedent held these shares merely for a few days or perhaps a few weeks, we think it would be evidence to support petitioner's theory. But 23 months strikes us as supporting the opposite conclusion, that decedent was the actual transferor of the original corpus of the 1923 trust. Furthermore, petitioner has never explained why Edwin S. Webster used his wife as a conduit, although it has attempted to explain, at length, how he did it. Why Edwin S. Webster would use his wife as a conduit to establish an insurance trust is as important as how he used her; barring an adequate explanation by petitioner, this factor gives further weight to our holding.

## II. *Power to Terminate Trust*

Section 2038(a)(2) states in part as follows:

(a) IN GENERAL.—The value of the gross estate shall include the value of all property—

    * * *

    (2) TRANSFERS ON OR BEFORE JUNE 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer * * *, by trust or otherwise, where the enjoyment thereof was subject *at the date of*

*his death* to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke * * * [Emphasis added.]

In 1923, decedent transferred Stone & Webster stock to a trust. Article 5 of the trust indenture states in part as follows:

(5) This Trust shall terminate in any event upon the death of the last survivor of the following persons, namely, Frances Webster, Mabel Webster Harte, Edwin S. Webster, Jr., and Mary M. Webster it [sic] may be terminated at any time during the life of said Jane deP. Webster by a written instrument executed by said Jane deP. Webster and by any two of her said children; and thereafter it may be terminated by a written instrument executed by at least a majority of her said children or if any of them have died then by a majority of the survivors of them. * * *

At decedent's death, the point of reference for section 2038(a)(2), three of decedent's four children had predeceased her. Petitioner argues that the trust indenture required the written consent of decedent and two of her children for termination, that at decedent's death only one such child was living, that decedent therefore lacked a power of termination, and that section 2038(a)(2) is thus inapplicable. Respondent argues that when decedent transferred the property to the 1923 trust she was 53 and had four children, that it was her intention to possess a power of termination to her death, that in all probability decedent did not consider that she might survive three of her four children and that, in light of this, decedent and her remaining child had the power to terminate, if they so desired, because the courts of the local jurisdiction would have allowed termination on the theory that they were curing a defect in the instrument.

Petitioner's Federal estate tax liability rests upon the character of a property interest, which decedent held and transferred under State law. We must look to Massachusetts law to determine whether decedent had, at her death, a power of termination which would cause the trust assets to be included in her estate under section 2038(a)(2). *Commissioner v. Estate of Bosch,* 387 U.S. 456 (1967). The majority of the cases petitioner and respondent cite are not Massachusetts cases and have, at best, only persuasive value to a Massachusetts court. The Massachusetts cases cited of necessity involve only somewhat analogous situations, as there is no Massachusetts Supreme Court decision exactly in point. What the parties have provided us with are the rules of construction that a Massachusetts court would

use in determining whether decedent had a power of termination at her death. We think these rules are best summarized in *Brewer v. Hassett,* 49 F. Supp. 501, 503 (D. Mass. 1943):

In determining what rights are created by an instrument transferring property in trust, the intent of the grantor is controlling. Gorey v. Guarente, 303 Mass. 569, 573, 22 N.E. 2d 99; Dumaine v. Dumaine, 301 Mass. 214, 218, 16 N.E. 2d 625, 118 A.L.R. 834. This intent is determined by an examination of the language of the entire instrument aided by the surrounding circumstances. Gorey v. Guarente, supra, 303 Mass. 574, 22 N.E. 2d 99; Dumaine v. Dumaine, supra; Clark v. Hearne, 263 Mass. 114, 116, 160 N.E. 309; Ware v. Minot, 202 Mass. 512, 516, 88 N.E. 1091. It is true that where there is no ambiguity in an instrument so that no doubt is raised as to the meaning of the provisions contained therein, extrinsic evidence of intent is not admissible. Chamberlain v. Van Horn, 246 Mass. 462, 141 N.E. 111; Best v. Berry, 189 Mass. 510, 75 N.E. 743, 109 Am. St. Rep. 651; Restatement, Trusts, Section 24b, Section 38, Comment a. * * *

From these rules of construction, we conclude that a Massachusetts court would first determine whether the trust indenture contained an ambiguity. If it did, then the court could look to the "language of the entire instrument aided by the surrounding circumstances."

With these rules of construction in mind, we turn to the instrument before us. Respondent's position merits little consideration since he never indicates where the alleged ambiguity lies. Decedent could terminate the 1923 trust only with the written consent of two of her children. At her death, only one such child was alive. It strikes us that "two" means exactly that, "two." This language could not have been more precise. In our opinion this instrument contains no ambiguity. If the instrument contains no ambiguity, then we do not have to examine the surrounding circumstances. Given these conclusions, decedent did not have a power to terminate under section 2038(a)(2).

We have no opinion why decedent required that consent of two of her children be necessary for termination, but such knowledge is not essential to our holding. A settlor in creating a trust is free to name such provisions as he chooses, and if they do not run counter to any rule or policy of law or involve an absurdity or contradiction between different parts of the instrument, they are valid and will be enforced. 1 Scott, Trusts 46 (3d ed. 1967).

Respondent argues, citing *Brewer v. Hassett, supra,* that the character of decedent's rights is not determined by the literal terms of the 1923 trust but rather by decedent's intent.

Respondent is correct in arguing that decedent's intent is controlling. However, *Brewer* and the Massachusetts cases cited therein make clear that when decedent's intent is unambiguously stated on the face of the instrument, no extrinsic evidence is admissible to modify that intent.

Our holding is strengthened by respondent's explanation of decedent's actual intent. Respondent argues that decedent's intent was clear—to be the judge, in essence the sole judge, of termination throughout her life since her children would presumably never be reluctant to termination. The children would allegedly never be reluctant to termination since upon termination they would receive their individual shares of the trust corpus. Respondent further argues that decedent probably never thought she would survive three of her four children and concludes that the courts of Massachusetts would sanction termination on the theory that they were curing a defect in the instrument (a contingency which never entered decedent's mind) to give effect to decedent's intent (to be, in essence, the sole judge of termination).

Respondent's explanation is implausible. If decedent wanted to be the sole judge of termination, why require the consent of her children at all? Furthermore, the children, or at least some of them, may have been reluctant to termination, contrary to respondent's allegation. Upon termination, each living child would receive his or her respective share of the trust corpus outright, thus enlarging each child's possible estate tax liability upon death. If the trust remained in effect, however, they would receive the benefit of the corpus, that is, income, but would not be saddled with possible liability of increased estate tax. Finally, the record is barren of any proof that decedent did not consider the possibility that three of her four children would predecease her. We only know that she was 53 when the trust was created and that she had four children. Beyond this we know little, as for example, the health of decedent and her four children at the time the trust was created.

Respondent is contending, in effect, that the courts of Massachusetts would reform this trust indenture to allow termination with only one child rather than two. Reformation of a trust instrument can have serious effects upon the fortunes of the various beneficiaries. The test for reformation in

Massachusetts, as set forth in *Dittemore v. Dickey,* 144 N.E. 57, 60 (1924), is particularly stringent:

*An omission to express an intention cannot be supplied by conjecture.* But if the instrument as a *whole* produces a *conviction* that a *particular* result was *fixedly* desired although not expressed by formal words, that defect may be supplied by implication and the underlying intention of the founder of the trust may be effectuated, provided it is *sufficiently* declared by the *entire* instrument. Eustace v. Dickey, 240 Mass. 55, 72, 73, 132 N.E. 852, and cases there collected. * * * [Emphasis added.]

Based upon respondent's theories and the record before us, we do not think Massachusetts courts would reform this instrument to allow termination with the consent of only one child.

Decedent did not have a power at her death in 1969 to terminate the trust because this power expired on October 8, 1968, when her third child died. It is well established that a transfer of property in trust with power reserved to the donor to modify it so as to change the beneficial interests, though not in his own favor, is incomplete and not subject to a gift tax until the relinquishment of such power. Sec. 25.2511-2, Gift Tax Regs.; *Sanford's Estate v. Commissioner,* 308 U.S. 39 (1939). Furthermore, it has long been settled that to constitute a taxable event, it is not necessary that the termination of the power results from some volitional act by the donor. *Adele F. Goodman,* 4 T.C. 191 (1944), affd. 156 F. 2d 218 (2d Cir. 1946).

Accordingly, we hold that a taxable gift occurred as of October 8, 1968, when decedent's power of termination expired. We have considered petitioner's arguments to the contrary and found them unpersuasive.

### III. *Postdeath Interest on Gift Tax Liability*

The third issue is whether interest on the gift tax liability accruing subsequent to decedent's death is deductible as an administration expense under section 2053(a)(2).[5]

In *Estate of David Smith,* 57 T.C. 650, 660-661 (1972), affd. 510 F. 2d 479 (2d Cir. 1975), this Court stated two conditions which must be met before the deduction of administration expenses under section 2053(a) will be allowed: (1) The expenses must be "allowable by the laws of the jurisdiction * * * under which the estate is being administered," and (2) the various

---

[5] The parties have stipulated that the gift tax liability itself plus interest thereon to the date of death is deductible as a claim against the estate.

requirements of respondent's regulations must be satisfied. We need deal with only the first of these conditions since the parties have agreed that interest on the gift tax liability accruing subsequent to decedent's death is deductible as an administration expense under section 2053(a) if allowed by the law of Massachusetts as an administration expense.[6]

The record does not indicate that, at the time of trial, postdeath interest had been allowed by a Massachusetts probate court. But this is not fatal to petitioner's cause since section 2053(a) says "as are allowable," not "as have been allowed." Furthermore, "a reasonable expense of administration will not be denied because no court decree has been entered if the amount would be allowable under local law." Section 20.2053-1(b)(2), Estate Tax Regs.

The first question is whether a Massachusetts probate court would have jurisdiction over the type of expense involved herein. Section 16 of chapter 206 of the General Laws of Massachusetts provides that an executor "shall be allowed his reasonable expenses." There is no specific reference to "expenses of administration," but section 1 of chapter 198 of the General Laws, which establishes the order of payment of debts, does refer to "charges of administration." In addition, *Old Colony Trust Co. v. Commissioner of Corporations and Taxation,* 162 N.E. 2d 36, 38 (Mass. 1959), citing section 16 of chapter 206, states that the "determination of deductions for costs and expenses of administration has been confided to the Probate Court." There is no serious question that the type of expense involved herein would not be within the jurisdiction of the proper Massachusetts probate court.

The next question is whether, granting jurisdiction, the court would allow such an expense as postdeath interest. "Under administration expenses would, of course, come any reasonable and proper liabilities incurred by the executor or administrator in the course of settling the estate." 1 Newhall, Settlement of Estates and Fiduciary Law in Massachusetts, sec. 185, p. 533 n. 3 (4th ed. 1958). Petitioner produced an expert witness, William Arthur Dupee, who testified that he has specialized in probate and trust law in Massachusetts for 37 years. The factual situation

---

[6] We do not think *Union Commerce Bank v. Commissioner,* 339 F. 2d 163 (6th Cir. 1964), affg. in part and revg. in part 39 T.C. 973 (1963), is applicable herein. In this case, we deal only with the narrow issue of allowance under Massachusetts law.

before this Court was presented to Mr. Dupee. In his opinion, the postdeath interest would be allowed by the proper Massachusetts probate court. We found him very credible and choose to accept his opinion.

Even if we lacked his testimony, our finding would remain the same. There is nothing in the record to indicate that petitioner has unduly delayed the payment of the gift tax (thus causing an increase in interest). There was a serious question whether any gift tax was owing at all. Petitioner could, of course, have paid the gift tax and sued for a refund, but it chose instead to dispute the matter in this Court, where prepayment of an alleged tax liability is not required. That is its right. We think that a proper Massachusetts probate court would allow the postdeath interest as a reasonable expense of administration. In light of the parties' stipulation, we hold the postdeath interest deductible under section 2053(a).

## IV. *Postdeath Interest on Loans Made During Decedent's Lifetime*

The executors paid $43,649.38 in interest which accrued subsequent to decedent's death on loans outstanding at the time of her death. Decedent borrowed the money to purchase United States Treasury bonds 3½'s of 11/15/98, which were later used to pay part of her estate tax. The interest was not deducted on any income tax return but was deducted on the estate tax return under section 2053(a). Respondent disallowed the deduction.

There are three conditions for allowability under section 2053(a): The expense must be (1) actually and (2) necessarily incurred in administration of the decedent's estate, and (3) the expense must be allowable as an administration expense under local law. *Estate of James S. Todd, Jr.,* 57 T.C. 288, 294-296 (1971).

Certainly there is no doubt that the interest payments were actually made; the parties have so stipulated. Nor do we see any problem with the condition of "necessarily incurred." Decedent had made these loans before her death. When the executors were appointed, the debts and the interest thereon became their obligation. The record does not reveal whether, upon their appointment, the executors could have immediately retired the debt and stopped further running of interest, but even if they could have retired the debt, we see no requirement for them to do

so. The unpaid balance on the loans was over $3.5 million at decedent's death. Considering the various items of major value in the estate, as for example, stocks and bonds, the executors would perhaps have lost money had they tried to raise such a great sum. We think it was eminently reasonable for them to pay the interest instead.

The third condition is whether the postdeath interest would be allowable as an administration expense under Massachusetts law. We have reviewed most of the pertinent material in the discussion of the previous issue. Here we need only add that in Massachusetts it has been held that an executor may borrow money and that the interest paid thereon is allowable. *Warren v. Pazolt,* 89 N.E. 381, 389-390 (Mass. 1909), citing *Crocker v. Old Colony Railroad Co.,* 137 Mass. 417, 419 (1884). The situation here is similar to *Warren,* and we think the proper Massachusetts probate court would allow this interest as a proper expense. As already stated, the loans and interest thereon became the obligation of the executors on their appointment. They had to pay the interest, unless, of course, they could have retired the debt on their appointment. Even if they could have retired the debt upon their appointment, there was no necessity for them to do so. We accordingly hold that the postdeath interest on the United States Treasury bonds is deductible under section 2053(a).

> *Decision will be entered under Rule 155 in docket No. 181-74.*

> *Decision will be entered for the respondent in docket No. 8799-74.*